[Civ. No. 13317.   Second Dist., Div. Two.   Feb. 9, 1942.]

JULIA C. WASHBURN, Appellant, v. DONALD K. WASH-BURN, Respondent.

Charles V. Caldwell and Howard E. Hurd for Appellant.

Thomas P. Menzies and M. W. Phelan for Respondent.

HANSON, J. pro tem.—This appeal relates to a contest between divorced parents concerning the custody of their minor children, a girl 9 and a boy 15 years of age. In the decree entered on December 14, 1939, granting the divorce to the mother after a contested trial, it was provided that she should have the custody of the children subject to the right of the father to visit them at reasonable times and to have them in his custody on alternate weekends. Less than six months after the interlocutory decree was entered the father procured an order directing the mother to show cause why the custody of the children should not be awarded to him on the grounds that since the entry of the interlocutory decree (1) she had neglected to care for the children properly and (2) she was

no longer a fit and proper person to have their care, custody
and control. Except to the extent that these grounds implied
that the welfare and best interests of the children required
a change of custody, there was no direct issue in respect
thereto and no competent evidence was adduced thereon.

Upon the testimony introduced at the hearing and upon a
written report and recommendation signed by an investigator
with the euphonious superscription of "court assistant," the
court awarded the custody of the children to the father.
Neither the report nor the evidence was restricted by the
court to the period subsequent to the decree. Moreover, it
appears from the record that the modification of the custody
provisions of the judgment was based upon the mother's
conduct prior to the original trial and known to the father.
So far as the ruling is based upon the mother's conduct sub-
sequent to the divorce decree, it appears that such conduct
was of a like tenor and no more serious than that which pre-
ceded the decree.

The mother contends (1) that there was no evidence of any
change of circumstances, nor was she shown to be less fit to
have the custody of the children at the time of the hearing
than at the time of the decree; (2) that the court based its
ruling on matters which were taken into account in the divorce
trial and there adjudicated when the court awarded the cus-
tody to her; (3) that the court refused to receive evidence
bearing on the unfitness of the father to have the custody,
and applied one standard of conduct to the mother and an-
other to the father; (4) that the record discloses an abuse
of discretion on the part of the trial court.

Inasmuch as the trial court had previously read the report
of the domestic relations investigator, it was stipulated by
counsel on the trial that the report might be received in evi-
dence. Thereupon counsel for the plaintiff stated that he
understood the court was of the view that the report estab-
lished a *prima facie* case for the defendant and that it was
the duty of the plaintiff to controvert it, after which defen-
dant would have the right of rebuttal. To that the court
responded: ". . . the way I think we should proceed in this
matter would be that instead of the moving party putting on
evidence, that the moving party stand on the report, which is,
of course, evidence and subject to be controverted. In other
words, it is not conclusive evidence. That is the situation."

Aside from the report the only evidence offered on the case of the defendant was testimony pertaining to certain personal conduct of the plaintiff prior and subsequent to the divorce. This testimony was given by two detectives who shadowed the wife from early in November, 1939, to June, 1940. One of the detectives testified he had seen Mrs. Washburn intoxicated on a dozen occasions, but with one exception none of these occasions was shown to have occurred subsequent to the decree of divorce. Other episodes testified to by the detectives occurred prior to the decree, with but two exceptions. One of these is that of her visit to her doctor's apartment on January 10, 1940. She and the doctor both testified that such visit was strictly professional. The other pertained to her meeting the doctor on the preceding December 19th at Palm Springs, but she was there accompanied by her neighbor and friend. All parties involved testified that the meeting was accidental and not prearranged.

It is undisputed that both parties have affection for the children and the children for them. Both children suffer from an asthmatic condition, which in the case of the girl is such as to require rest periods in school. Both parents are equally interested in their welfare and in providing the best educational advantages for them. In that regard the father, when called to the stand by counsel for the mother, testified that he had no educational plans for the children which would work out better for them than those employed by the mother. He also testified that he had visited the home of plaintiff quite often to see his children and always found the house clean, and added that Mrs. Washburn was ''one of the best of housekeepers.'' He always found someone at home with the children if the mother was not there. So far as the evidence goes there is not one iota to indicate that the children did not have the best of care from their mother, and none to indicate that any of the acts or conduct of the mother of which the father complains was known to the children. The maternal grandmother of the children lives in the mother's home and assists with the housework and the care of the children. The father is active in his business and employs a housekeeper to maintain his home; and so if the children were to reside in his home they would be largely under the immediate care of a housekeeper or of a governess if he employed one, as he stated he would if awarded the custody.

Moreover, so far as the record discloses the home surroundings are the same now as when the interlocutory decree was signed.

The record does not disclose the ground upon which the decree of divorce was granted. It does, however, show that the parties separated about September 1, 1939, when the husband left home to reside elsewhere. When the wife in October, 1939, filed her action for divorce the husband immediately employed detectives to shadow her, and this shadowing continued not only up to the date of the divorce trial but until after the order to show cause herein was issued and served. What acts or conduct of the wife were relied upon by the husband at the divorce trial to award the custody of the children to him rather than to the wife is not disclosed by the instant record. The wife's acts and conduct on the night prior to the contested divorce action, upon which the judge below relied so heavily in transferring the custody of the children, was known at the time of its occurrence by the husband. Accordingly we must necessarily assume that the facts in connection with that episode became a part of the record in the divorce action and were considered by the court. If they were not, it is not a matter upon which the husband may rely in the instant case.

■ In custody cases the underlying principle, paramount to all others, is the welfare and best interests of the child. ■ In no way in conflict with this rule is another, equally well established, that once a court has decreed it there may be no change in the child's custody except where adequate cause therefor arises out of changed conditions. This principle is based on the idea not only that the stability of the home life of the children is an important and vital factor, but also that the turmoil of litigation must somewhere end. Short of a modification based upon adequate grounds, the decree awarding custody is conclusive and settled beyond recall other than by appeal. ■ Moreover, the acts and conduct of one of the parties to the divorce which give offense to the other, or even to the public at large, are not a matter that calls for or permits a change of custody unless such acts and conduct are shown to affect directly the welfare and best interests of the child. ■ Where a court has decreed custody to one parent, such parent may not be deprived of the custody for any supposed unfitness unless it be shown that he or she

is so unfit as to endanger the child's welfare. ■ A custody proceeding is not one to discipline one parent for such parent's shortcomings as an *individual*, nor to reward the other for any wrong suffered therefrom. Much less are the faults of relatives or ancestors a matter of any concern. Before a decree awarding custody may be vacated and the child's life unsettled the evidence must be clear and convincing that the child's welfare and best interests will be directly promoted by a change. ■ Generally speaking, there may be no change in the custody provisions of a decree unless the material facts and circumstances occurring subsequently are of a kind to render it essential or expedient for the welfare of the child that there be a change. While each case must be solved on its own facts, there are, of course, elemental factors common to all cases that must not be overlooked.

■ It is not open to question, and indeed it is universally recognized, that the mother is the natural custodian of her young. This view proceeds on the well known fact that there is no satisfactory substitute for a mother's love. So true is this that in this state the code exacts that she shall have custody of her child, everything else being equal, unless the child has reached the age which necessitates a particular education or preparation for its life work. (Civ. Code, sec. 138.) In the case of girls it is obvious that they are particularly in need of the sympathy, affection, consideration and tender care which only a mother can give—and so normally they should be in her custody.

■ Only such evidence as bears on the question of the welfare and the best interests of the child is admissible or to be considered. Where custody has once been decreed such evidence must generally be limited to such proper and material evidential facts as have arisen subsequent to the decree. As this is a matter of substantive law and not a rule of evidence, it is not necessary to object to the evidence that goes beyond the rule, as the court must disregard it. (Wigmore on Evidence (3d ed.), § 2.) ■ Where it is contended that the subsequent conduct discloses a vital change in the conditions upon which the decree was entered, such earlier facts may be shown for that one purpose; but the decision may not be predicated thereon, except in unusual cases. We have no such unusual case here.

■ Although we are deprived of a knowledge of the

pleadings and the evidence upon which the decree was entered in favor of plaintiff, nevertheless such a decree conclusively presupposes that the mother was the proper person to have the custody of the children despite any conduct prior to the court's decision. The decision may or may not have considered the father an equally proper person to have the custody of the children, but it is clear that the court concluded that the welfare of the children required that the custody be awarded in the manner it decreed. ▉ However, we think it needs to be made . clear that an action or issue involving the change of custody of minor children from one parent to the other is a judicial proceeding, to be conducted in a strictly judicial manner, in which the decision is to be rendered by the judge only upon evidence before him.

▉ Under the Constitution of this state the judicial power to award the custody of children is vested in the courts alone, and in the exercise of that power the law requires a full hearing and a decision on the evidence produced under oath or upon the stipulation of the parties. The power of decision vested in the trial court is to be exercised by a duly constituted judge, and that power may not be delegated to investigators or other subordinate officials or attachés of the court, or anyone else. ▉ The court may not even delegate to a referee the power to decree a divorce upon sworn testimony, duly corroborated, taken by a referee vested with the power to administer oaths. (Civ. Code, sec. 130.) ▉ It is the constitutional right of every citizen and every litigant to be governed by the law as expounded by the judges, and not by officials or employees provided by the legislature to assist a judge in an administrative or quasi-judicial capacity. Such help as may be accorded a judge to assist him in the exercise of his judicial functions may never be permitted to reach the point where someone else decides the case or an issue before him. ▉ Investigators provided by the legislature for the Domestic Relations Department of the Superior Court of the County of Los Angeles and the City and County of San Francisco, through appointment by a majority of the judges of the respective counties, are investigators only; nothing more. They are not court assistants nor are they endowed with a single judicial attribute. It is neither their province to recommend a decision nor to decide a single issue that comes before the court. They do not rank with special masters, com-

missioners or auditors appointed by the court. They have not even power to administer the oath or to take evidence. It is not contempt of court for a witness or a party to deny them information. They may act as messengers of and acquire information for the judge, but in no event may their influence upon the chancellor guide or control the decision of a cause. The legislature does not prescribe their duties, and their duties are only such as the judges of the court declare; and such may in no event extend beyond the strict limits of the Constitution. The notion that the report of an investigator is *prima facie* evidence, or that an investigator may delve into and report on factual matters antecedent to the date of a prior decree, has no legal sanction.

There is here no need to mark the exact boundaries beyond which an investigator may not go as to matters which have transpired subsequent to a decree. It is enough to say that an investigator stands in no better position than an ordinary witness, and must be available for complete cross-examination on any matter on which he or she reports at the instance of a judge. Moreover, an investigator may make no secret report, but stands like any other person—subject to an order of contempt if he does. There is no back door to the courts for witnesses, investigators, litigants or others. We pronounce thus positively because there appears over the years to have been a popular misapprehension by the courts as to their relation to their attachés under the statutes. (*Cf.* Wigmore on Evidence (3d ed.), vol. 1, p. 111; *Bestel* v. *Bestel* 153 Ore. 100 [44 Pac. (2d) 1078, 53 Pac. (2d) 525].)

In the instant case the report submitted violates nearly all the rules. It does not possess a single vestige of judicial restraint. Aside from "recommending" a change of custody from the mother to the father, the report, which occupies 15 printed pages of respondent's brief, is a very partial and extreme brief and argument for defendant. Instead of seeking *facts* during the period *subsequent* to the interlocutory decree and bearing directly on the issues involved, made necessary by the order to show cause, the report goes back thirty years to narrate the matrimonial history of plaintiff's mother and sister, as well as that of her closest friend. It eulogizes the country home of the father, but reaches conclusions as to his own conduct which are not supported by his own admissions, and evidences the biased cre-

dulity of the investigator. It is almost entirely hearsay, and most of it is hearsay piled upon hearsay, with ample ground for appellant's complaint that the report impales her on the apex of a pyramid of neighborhood gossip and hearsay. It contains medical diagnoses and conclusions incapable of acceptance from such a source and directly conflicting with the sworn testimony of a qualified physician.

The force and influence of the investigator's report upon the judge is revealed by innumerable references to it in his questions to witnesses and his quotations from it as he decided the case from the bench. Moreover, he rested his decision in large part on it as well as on testimony that was inadmissible. For that reason alone there must be a reversal.

A further contention that the court was without authority to order Mrs. Washburn to repay the sum of $250, representing the September payment for the maintenance of the children, is well taken. It was not a matter within the issues.

The order is reversed.

Moore, P. J., and McComb, J., concurred.