[Civ. No. 16278.   Second Dist., Div. Three.   Dec. 8, 1948.]

DOROTHY LEE BEMIS, Appellant, v. KENNETH W. BEMIS, Respondent.

Jerry Giesler, Robert A. Neeb, Jr., and Blase A. Bonpane for Appellant.

F. B. Fernhoff, Hugh B. Rotchford and Donn B. Downen, Jr., for Respondent.

SHINN, P. J.—Plaintiff, Dorothy Lee Bemis, and defendant, Kenneth W. Bemis, were married in 1938, they separated in 1943 and were divorced by final decree in 1945. There are two children, Kenneth aged about 5½ years, and Dorothy aged about 7 years. In her complaint for divorce Mrs. Bemis charged cruelty. She alleged that the children were then in the custody and under the control of defendant's mother and the prayer of the complaint was that the court make "such order for the custody and control of the minor children of the parties as may be proper." Defendant filed a cross-complaint in which he accused plaintiff of desertion. Plaintiff did not answer the cross-complaint and her default and an interlocutory judgment of divorce were entered, but were later set aside. It appears that plaintiff then filed an amended complaint and an answer to the cross-complaint, but that these were withdrawn pursuant to a stipulation, and the case was tried as a default upon the cross-complaint. At the trial a property settlement agreement was introduced in evidence and approved by the court, but it is not a part of the record on appeal. It was alleged in the cross-complaint that the cross-complainant was a fit and proper person to have the care and custody of the children and that the cross-defendant was not. The prayer was that cross-complainant be awarded a divorce and the custody of the children. In the divorce action the court found that the father was a fit and proper person to have custody of the children, but made no finding that the mother was an unfit and improper person to have custody. The decree provided that the "legal" custody be awarded to the father with the right of the mother to reasonable visitation and the right to have the children with her on alternate week ends and one-half of school vacation periods. We understand from the testimony upon the hearing of the application for modification that one of the terms of

the agreement was that the children were to be placed in a children's school and that it was not contemplated by the parties that they would be in the actual custody of their father. This is borne out by the provision of the decree, awarding the father "legal" custody, from which it appears that the court understood, as the parties did, that the children would be in a school and not actually under the care of their father. As will be developed later, it is further borne out by the conduct of the parties after the plan to keep the children in a boarding school proved unsatisfactory.

In December, 1946, plaintiff filed an affidavit in support of her application for modification of the decree and an order to show cause was duly issued. Plaintiff's affidavit read in part as follows: "That since said Order was made the conditions and circumstances surrounding the parties, and upon which said Order was based, have materially changed, in this: . . . That since the original order was made the parties hereto have entered into a written agreement in which it was mutually agreed that the said minor children would be placed with plaintiff's mother in her home where plaintiff was residing, and that said children would remain in that home until September, 1947, at which time said children were to be placed in the home of defendant's parents. This agreement has been carried into effect and since March 22, 1946, said children have been actually in the care of affiant, the plaintiff herein, and defendant has acquiesced in allowing affiant to have the actual care and control of said children. That the minor son, Kenneth Bemis, has been ill and confined to his bed for approximately nine months with a condition known as rheumatic fever and she has been informed by her doctor and she believes and therefore alleges that it would be for the best interests of this child for him to continue under the same care, control and treatment as he has been receiving from affiant. That affiant has been devoting her full time since said children arrived in her mother's home to the care of said children and is devoting herself entirely to their welfare. That said children are young and are in need of a mother's care, love and devotion and said children are now receiving, and will receive as long as they are with affiant, the type of care and love that will be for their best interests." Upon the hearing of the order to show cause the court made an order reading in part as follows: "It is hereby ordered that the evidence having failed to establish that there is a sufficient change in circumstances

and conditions surrounding the parties hereto and their minor children to justify any change in the order heretofore made and referred to above that the cross-complainant, Kenneth W. Bemis is entitled to, and it is hereby ordered that he shall have the sole legal custody of the minor children of the parties hereto . . . ." Plaintiff was granted the right of reasonable visitation and the custody of the children from the closing of school sessions on Friday until 5 p. m. Sunday of every other week, and also custody for the first half of each summer school vacation. Plaintiff appeals from this order.

The law of the case is quite clear. It is stated in section 138, Civil Code, as follows: ". . . (2) As between parents adversely claiming the custody, neither parent is entitled to it as of right; but other things being equal, if the child is of tender years, it should be given to the mother; if it is of an age to require education and preparation for labor and business, then to the father." The "other things" that are to be weighed and considered are a good home, congenial surroundings, intelligent attention and direction in matters affecting the health, growth and development of the children—these are the principal advantages that must be looked for. The court has a broad discretion in determining whether such advantages are offered by the respective parents, and whether they are equal, but if the evidence clearly establishes that the children will have equal advantages in the home of the mother and that the mother has demonstrated her ability and willingness to perform her maternal duties properly, the law requires that young children be placed with her.

The parties are agreed that the only question before the trial court was whether there had been a change of conditions with respect to the best interests and welfare of the children which required the court to exercise its discretion under conditions materially and essentially different from those which prevailed when the divorce decree was rendered and to reach a different conclusion as to custody.

Respondent contends that the provision of the decree awarding custody to the father carried with it an implied finding that plaintiff did not have ability or the willingness to devote herself to the children and to give them the intelligent care and attention which they needed, or, in other words, that she was unfit to be their custodian. Respondent says in his brief, "the only legal ground upon which a court can deprive a

mother of children of tender years under our law being that the court has found the mother to be an unfit and improper person to have their custody and control, it therefore follows that the implied finding of the court from the award and decree itself is that the mother at that time must have been an unfit and improper person.'' There was, as we say, no finding in the decree of unfitness on the part of the mother. An award of custody to the father does not in every case imply a finding of unfitness on the part of the mother, but upon the record which is before us it seems logical for us to agree with the defendant on this point. He presented his side of the controversy and prevailed in the trial court upon the same theory. He did not stand upon the agreement as a basis for the award of custody to him, and the court therefore had no occasion to construe and give effect to the decree awarding defendant ''legal custody'' after a consideration of the terms of the agreement and the understanding of the parties that the children were to be kept in a boarding school. In support of his contention that he gained custody because of plaintiff's former unfitness, defendant argues here that the agreement itself carries an implication of plaintiff's unfitness at the time, for he says it is inconceivable that plaintiff would have consented to the terms of the agreement ''unless she were. convinced that respondent could produce more than sufficient evidence if a contest arose to convince any court that she was an unfit and improper person to have custody of the children.'' Therefore, under defendant's theory of the case, the sole ground upon which the mother was deprived of the custody of the children by the interlocutory decree was that she was shown to be either unable or unwilling to give them proper maternal care and attention. There was some evidence, although slight, that plaintiff was not at that time well qualified to take care of the children. She admitted in her testimony at the custody hearing that for a matter of at least some weeks, both before and after the divorce trial, she was in a highly nervous and upset condition. Defendant refers to it as a condition of emotional instability, but by whatever name it is called, it was a condition which plaintiff explained was due to the breaking up of her home and was shown to have been of a temporary nature. It was clearly not an unnatural condition under the circumstances, although it may well have been of sufficient severity to cause her to surrender temporarily her claims to custody of the children and to justify the trial court in depriving her of their custody for

the duration of her incapacity. The question, then, is whether this incapacity or unfitness has persisted or has completely disappeared. (See *Munson* v. *Munson*, 27 Cal. 2d 659, 665 [166 P.2d 268]; *Prouty* v. *Prouty*, 16 Cal.2d 190, 194 [105 P.2d 295].) The evidence to the effect that the condition lasted but a few months is without the slightest contradiction, and there was no evidence whatever at the custody hearing that plaintiff's unfitness had been due to anything other than a temporary nervous condition.

Plaintiff was cross-examined at length as to whether she and members of her family had been guilty of described acts of misconduct. She was asked whether she had not, prior to the divorce, in the presence of her daughter Dorothy, stated to a woman acquaintance that she had stayed all night with a man other than her husband, that she had told the children she was engaged to him, and that she intended to divorce defendant and go to China; whether these statements had not been made on the same day she had an appointment with a photographer to have some pictures taken; whether there had not been a long enduring strain of insanity in her family, manifested among some of her mother's relatives; what her present condition was with reference to emotional insanity; whether her father was not a member of Alcoholics Anonymous; whether her father had not at a time not stated become inebriated on one occasion, had removed his clothes and stated that he wanted to walk around the block; and whether on another occasion, the date of which was not stated, her father had not become inebriated and attempted to have sexual intercourse with her. The answers which plaintiff gave to these questions were emphatic negatives, which might have been expected. Under the simplest rules of evidence it was unnecessary to question plaintiff concerning the alleged incidents in order to lay a foundation for proof that they had occurred. Notwithstanding plaintiff's denials, no witness was called by defendant in an effort to prove that the suggested incidents had ever taken place. It does not appear that any of the suggested misconduct took place after the institution of the divorce action.

In somewhat similar vein, after a conference with the court in chambers, and when it appeared that the court would probably not receive the evidence, defendant's counsel made an extensive offer of proof of plaintiff's alleged misconduct prior to the institution of the divorce action. The court sustained an objection to the offered evidence with leave

to renew the offer, but it was not renewed and no witness was called to prove any of the supposed acts of misconduct. The proposal was climaxed by an offer to prove that prior to the divorce plaintiff had been photographed while engaged in an act of sexual intercourse with a Mr. ''Y.'' It was not stated nor even suggested that any of the supposed misconduct of plaintiff was made known to the court in the trial of the divorce action. The decree, as we have said, was on the ground of desertion. The offered proof would not have shown any misconduct of plaintiff in the presence of the children or that was brought to their attention, nor was there any offer to prove that plaintiff had neglected them at any time.

We should also mention here defendant's contention that there was other material evidence which tended to justify the order under review. Defendant filed an affidavit in opposition to plaintiff's application for modification, in which he stated that plaintiff's brother was then under arrest, charged with murder, and that the brother had confessed his guilt. In respondent's brief the brother is called ''Machine Gun Walker'' and we are asked to take judicial notice of the fact that ''he pleaded not guilty and not guilty by reason of insanity and based his plea not only on his personal condition but upon his family background which was rampant with insanity both on the paternal and maternal sides,'' and we are also asked to take judicial notice of the fact that young Walker is under sentence of death. There was no evidence whatever that plaintiff's brother at any time resided in the home where the children have been, or that they saw him except on rare occasions. We stated during the oral arguments that we were not impressed, or rather that we were not favorably impressed, by this attempt to attack the character of plaintiff through evidence of her brother's misdeeds. We have not altered our views, either as to the relevancy of the stated facts or the propriety of asserting them, nor have we judicial knowledge that the facts are as stated.

With reference to defendant's offer of proof, we note in his brief the following statement: ''The law of our state holds that in practically all instances acts of the parents which occurred prior to the award of the custody of the children are not admissible in evidence on petition for a modification of said custody decree and award because they are res adjudicata.'' Nevertheless, defendant's offer of proof related entirely to alleged misconduct prior to the divorce,

We have referred at length to defendant's offer of proof, to his cross-examination of plaintiff, and his references to plaintiff's brother because they have, in our opinion, a significant bearing upon the denial of plaintiff's application for modification. It is our opinion that when the case is viewed in perspective it will appear that defendant presented nothing except his indirect accusations of alleged acts of immorality on the part of plaintiff prior to the divorce, insinuations of drunkenness and evil conduct of plaintiff's father, suggestions of insanity in plaintiff's family, and the asserted crime of plaintiff's brother, all of which was calculated to create the impression that the Walker household was an unfit home for the children, whereas the showing made by plaintiff in behalf of her application consisted of uncontradicted direct evidence upon the question in issue, which tended to prove that the welfare of the children would be best served by modification of the decree.

We shall now proceed to discuss the evidence relating to the conditions under which the children lived between the date of the decree and the time of the hearing. They were placed in a children's home under agreement of the parties, where they remained for some four or five months. They became ill, the parents became dissatisfied to allow them to remain in the home, and they were removed. Both children had contracted chicken pox. Kenneth contracted rheumatic fever and chronic nephritis, a disease of the kidneys. He also developed chorea, a nervous affliction, and a cardiac murmur which resulted from the rheumatic fever. Dorothy had contracted a chronic kidney infection. Kenneth was bedridden. After the children were removed from the children's home, defendant kept them in his home for several weeks. It does not appear that he had anyone other than himself to care for them. In March, 1946, under agreement of the parties, the children were placed in the home of plaintiff's mother and father, Mr. and Mrs. Walker, where plaintiff was residing. They remained there under the care of plaintiff until the court made the order under review.

In October, 1946, defendant remarried. Shortly thereafter plaintiff made application for modification of the decree, the matter was heard in January, 1947, and the court made the order previously mentioned. The following facts were established by uncontradicted evidence: The Walker home is adequate in all respects for the accommodation of those who reside there, namely, Mr. and Mrs. Walker, plaintiff and the

two children; Kenneth has at all times remained bedridden, his mother has been in constant attendance upon him, carrying him about the house wherever he needed to go and nursing him under the direction of a competent physician, who had been selected by defendant to care for the children; complete rest is considered to be the best treatment for him, and it was the opinion of the attending physician given at the hearing that Kenneth would have to remain indoors for another year; when Dorothy came to the home of the grandparents she was thin, nervous and suffering from a kidney infection; both children were then disobedient; under the care of the physician and the mother both have materially improved in deportment and health; they have been happy and contented; Dorothy has visited in her father's present home but has not enjoyed herself there and has objected to the visits; she has been attending school; defendant has visited the home frequently and has observed the conditions under which the children have been living, and the care that they have received; he has been paying an ample sum for their support; the mother has not been employed and has devoted herself exclusively to the care of the children; until plaintiff's brother got into trouble defendant was satisfied with the conditions in the Walker home and the care which plaintiff has given the children; prior to the institution of the present proceeding he had uttered no word of criticism to plaintiff or her mother, and at the trial had no fault to find with plaintiff's conduct in the matter of the care of the children, or in any other respect, during the period subsequent to March, 1946.

Two witnesses, neighbors of plaintiff, testified that they had been in the Walker home frequently over a period of years, that they were thoroughly familiar with the manner in which the children were living and being cared for. Their testimony was quite explicit, well informed and definite to the effect that the children had an excellent home and were enjoying the best of care. Seven other witnesses, one of them a physician, were prepared to testify on the subject. It was stipulated that their testimony would be the same as that of the two neighbors who had testified. Defendant's testimony consisted merely of a description of the residence which he owned with his sister and in which he lived with his new wife. He assured the court that the children would be welcome in his home and would receive proper care from his present wife, or if necessary from a nurse. Defendant's wife also testified; she is 25 years of age, had been previously married

and divorced and had no children of her own, had never seen
the boy Kenneth, and had seen Dorothy only half a dozen
times. She also was willing to take the children into the
home.

The absence of evidence that the children have not been
in a good home and receiving the best of care is somewhat
significant when it is considered that defendant must have
been well informed as to conditions in the Walker home when
he consented that the children be placed there, and made no
complaint as to the conditions under which they were living.
It was not until he remarried that he announced his inten-
tion to remove the children and thus prompted plaintiff
to apply for a modification of the decree.

We can scarcely conceive of a more complete change of
controlling conditions than was established at the hearing
by the uncontradicted evidence. There was no evidence what-
soever before the trial court upon the hearing that plaintiff's
unfitness to have custody of the children at the time the
divorce was granted was due to any misconduct upon her
part or to any condition except one of temporary emotional
upset, but even if it had been shown that prior to the grant-
ing of the divorce plaintiff had neglected the children, it was
conclusively shown in the later hearing that since March, 1946,
she has been a competent, devoted, affectionate mother. Her
ability, willingness, and even eagerness, to devote herself
exclusively to the welfare of the children was not questioned
at the trial. If the conditions that have prevailed since March,
1946, had existed at the time of the trial of the divorce action,
there can be no doubt whatever that the court upon the same
evidence would have awarded plaintiff the custody of the
children; and we might here mention that the court at
each hearing has allowed the children to be with plaintiff
every other week end and one-half of each summer school
vacation. But under the present order the children would
leave the home of the mother and be with her only during
these brief periods. The bedridden little boy would be placed
under the care and supervision of defendant's young wife
who has never seen him, nor had children of her own.
Dorothy would be placed in a home which she has said she
did not wish to visit. This has been ordered upon the basis
of a finding that no material change of conditions has taken
place. But the finding is directly contrary to all of the
evidence. In fact, the situation of the children has developed
in accordance with common experience in such matters. The

award of custody to the father by reason of the mother's temporary incapacity did not work out satisfactorily, and in the natural course of events, when the mother was able to provide a proper home and maternal care, the children were placed with her. This was because it was recognized that it was to their interests that they be with her. It is a situation that should not be disturbed until a change is required in the interests of the welfare of the children.

Upon the undisputed evidence in the case, section 138 of the Civil Code is controlling. When facts are established which clearly make applicable the quoted provision of the section that custody should be awarded to the mother, it is not within the discretion of the court to ignore it. There is no more sound or universally recognized rule of law to be found in the books. Where the court finds that ''other things'' are equal, young children are invariably given into the custody of their mother. We say ''invariably'' because we have not found in our reported cases a single instance in which the custody of young children has been awarded to their father upon evidence that the mother was a fit and proper person to have their custody and was able to give them advantages equal to those that they would enjoy in the home of the father. We need not elaborate upon the reasons which underlie this sound policy of the law. They are stated with great clarity and completeness in many cases, and we shall therefore refer only to *Juri* v. *Juri*, 69 Cal.App.2d 773 [160 P.2d 73], and cases therein cited.

Defendant refers to several well-established rules which he contends support the order, namely, that the courts are reluctant to order a change of custody and will not do so except for imperative reasons; that it is desirable that there be an end to litigation and undesirable to change the child's established mode of living; that ordinarily a change will not be ordered for alleged unfitness of the one having custody without a showing that the welfare of the child clearly requires it. (See *Washburn* v. *Washburn*, 49 Cal.App.2d 581-587 [122 P.2d 96].) The soundness of these rules is beyond question. But all other rules must yield to the fundamental one that the court should always adopt the course that is for the best interests of the child. (*Beyerle* v. *Beyerle*, 155 Cal. 266 [100 P. 702]; *Lefebvre* v. *Lefebvre*, 48 Cal.App. 483 [192 P. 76].) Each case must be judged upon its own facts. Those of the present case are unique. Ordinarily it is attempted to show that the conditions under which the child

is living are detrimental to its welfare and that a change of custody will remedy that situation. That is not our case. It is usually true also that a change of custody would disturb the child's established mode of living. Here the reverse is true. If the present order should be carried into effect the result would be to deprive the children of the companionship and supervision of their mother which they had had all their lives except for a period of a few months. On the other hand, modification of the order would maintain, not alter, that status. In practical effect the rules upon which defendant relies would lead to a modification of the decree rather than to a refusal to modify it. The situation of the children is exactly the reverse of what it would have been had actual physical custody been in the father since the decree was rendered. In other words, award of custody to plaintiff would not have the effect of changing the conditions which are usually within the contemplation of the court that the one to whom custody is awarded will have personal care and supervision of the children. Those conditions have had no existence, inasmuch as the children have not been with their father. Modification would maintain the present conditions which were arranged by the parties in the interests of the children and have been proven to be entirely satisfactory from that standpoint. Necessarily, our references are to the time of the hearing and the conditions that then existed.

While we have placed our holding upon the basis of change of circumstances alone we do not thereby imply that materially changed conditions must always be shown. (See *Foster* v. *Foster*, 8 Cal.2d 719, 728 [68 P.2d 719] ; *Peterson* v. *Peterson*, 64 Cal.App.2d 631 [149 P.2d 206].) All rules on the subject are elastic, save one, namely, that the welfare of the child is of first importance under any and all conditions.

Upon the record defendant's opposition to modification finds support only in the purely legal ground that having been awarded custody of the children he may not be deprived of their custody without a showing that he has become an unfit custodian. For the reasons stated we deem this an insufficient ground for the denial of plaintiff's application. Under the unusual circumstances of the case the inquiry should have been as to the conditions surrounding the children in the mother's home, inasmuch as they had not been with their father. The court heard all the evidence that defendant introduced, or offered, which tended to prove that at the time of the hearing plaintiff was an unfit person to

have custody, and as to whether she had ever neglected the children or failed in her maternal duties toward them. Considering the age of the children and the record, as we have stated it, we are of the opinion that it was an abuse of discretion to refuse to modify the decree.

It is argued by defendant that the court may have disbelieved the testimony of plaintiff and her witnesses. We cannot agree. Two disinterested witnesses, neighbors of plaintiff, had testified in her favor. It was stipulated that the testimony of seven others who were about to be called would be the same. There was no contradictory testimony. To infer that the court disbelieved these witnesses would extend beyond all reason the rule that on appeal all intendments are in favor of the correctness of the judgment or order under review.

The order is reversed with directions to grant plaintiff's application by awarding her the custody and control of the minor children upon such conditions, not inconsistent with this opinion, as the court may deem proper.

Wood, J., and Vallée, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied January 20, 1949. Shenk, J., Schauer, J., and Spence, J., voted for a hearing.