[Civ. No. 18699.   Second Dist., Div. One.   July 22, 1952.]

MARY S. NORTON, Appellant, v. RICHARD J. NORTON, Respondent.

Marvin M. Chesebro for Appellant.

Joseph Scott, J. Howard Ziemann and Gordon L. McFarland for Respondent.

DRAPEAU, J.—Richard J. Norton and Mary S. Norton were married August 16, 1941.  Two children were born of the marriage: Michael, now about 9 years old, and Genevieve, now about 4 years.

Mr. and Mrs. Norton were divorced, by an interlocutory decree August 9, 1949, and by a final decree August 18, 1950.

By the interlocutory decree the mother was awarded custody of both children.  But, in September, 1949, one month after the entry of the interlocutory decree, by agreement of the parties Michael was turned over to the father.

The mother remarried in December, 1950.  The father also remarried; to a lady with two children by a former marriage.

The father sent the boy to the mother, to be present at her second marriage.  After her marriage the mother sent word to the father that she was going to keep the boy in her home.

So the father presented his motion to the superior court for modification of the original order of custody.  After a somewhat protracted trial the trial judge ordered that the

father be given custody of the boy. From this order the mother appeals.

Reference is made to a further and more detailed statement of the facts in a dissenting opinion in this case by Mr. Justice pro tem. Hanson.

When one gets through with this case, it boils down to this: The mother was awarded custody of the boy, but was unable for financial reasons to take care of him. So the father took him and placed him in the boy's grandmother's (the father's mother's) home. Then the father moved into his mother's home and paid a lot of attention to the boy, taking him on trips, on outings, and elsewhere. Then the father married a woman with two children. And the boy's mother remarried. Each parent now has a home of his own where the boy may live.

Assuming, as this court thinks the trial court properly did, that both homes were with proper persons; taking into consideration, as we think the trial court did, the principle that other things being equal the mother should be given first consideration; nonetheless this court is of the opinion that there is substantial evidence supporting the findings of the trial court that the best interests and welfare of the boy require that he stay with his father.

The order so made was within the discretion of the trial court, and we are unable to say that there was any abuse of discretion. The tragedy in this—as in so many divorce cases— is to be found in the hurt done to a child. When parents will not go along together, or by the conduct of either or both of them make it impossible to go along together; when they cannot or will not maintain a home in which their child may grow to manhood and have the benefit of the love and protection of both father and mother, such parents will never know what they have done. The hurt to them in after years of being deprived of custody will never equal the hurt inflicted by them themselves upon a helpless child.

So this court agrees with the trial judge that this boy should not be moved around any more. He has been domiciled with the father for some time. It may be assumed that he told the trial judge that he did not object to being with his father, and that the trial court believed that it would be a mistake to change the boy's residence and manner of living, at least for the present. Some doubt may be expressed as to whether the boy will be as welcome in his father's new home, along with two children of a former marriage of the step-

mother, as he was with his grandmother. But in the circumstances of this case at this time this court is bound by a fair exercise of the discretion of the trial court.

The order is affirmed.

Doran, Acting P. J., concurred.

HANSON, J. pro tem., Dissenting:

I am compelled to dissent from the majority opinion for two reasons. First, I am unable to find any substantial evidence to support the order of the trial court. Second, the majority opinion assumes, as the trial judge did, that as a matter of law the custody provisions of a final decree, may be changed upon the sole ground that such change is for the child's welfare even though there is no showing of any adverse facts or circumstances rendering it essential or expedient for the welfare of the child that there should be a change.

To point up this dissent it is necessary to enlarge somewhat upon the facts as they are recited in the majority opinion. In January, 1951, four months after the final decree of divorce was entered in this case awarding the mother the custody of her son aged 7, and her daughter aged 1½, the father sought and was granted a change of custody of the boy upon the sole ground that it was in the best interest of the boy to live with his father in the latter's new home, although both parents were found to be perfectly fit and proper to have his custody. Nevertheless it should perhaps be stated that the boy's father was arrested and plead guilty to a charge of drunk driving as recently as in October, 1950, when the boy was living with him. The divorce decree had ordered the husband to pay his wife $50 per month for her support and $25 per month for the support of each child.

As the divorce decree gave the wife a total of only $100 per month for her support and that of her two children and as the defendant told her he could not increase the payment she asked him if his mother could not care for the boy so appellant could procure a job and amplify her income. This proposal was accepted and thereafter the boy lived in the paternal grandmother's home for 15 months along with his father who moved in with him, until his mother married a man (who had not been married before) on December 30, 1950. Less than two weeks later the defendant married a divorcee with two children, and thereupon sought the actual and legal custody of his son.

The trial judge as a result of an interview with the boy in chambers found he was very fond of both parents, but personally wished to be with his father, undoubtedly due in large part to the fact that the father during the 15-month period took him on week-end trips, on hikes, to movies, and provided other amusements for him. There appears to be no question but that the boy has at all times been well treated by both parents.

Originally the father was in the heating and cooling business, but at and prior to the hearing he was engaged in the retail liquor business which he testified would shortly yield him $400 a month although at the time he was receiving therefrom only $100 per month. The boy's stepfather is in the mortgage loan business. At the time of the hearing, the latter, his wife, the boy and her little daughter were living in Brentwood in a home which he and his wife had purchased. The latter was no longer working, but devoting her entire time to her new home, the children and the husband. Appellant's husband it appears is very fond of the boy, is entirely companionable with him, and appears to be proceeding to interest him in worthwhile activities. The advantages the mother and her new husband are able to and do give the boy are equal to those he would be able to enjoy in the home of the father. In the mother's home he has the companionship of two blood relatives, his mother and sister; in his father's home, but one.

In *Bemis* v. *Bemis,* 89 Cal.App.2d 80 [200 P.2d 84], in an opinion by Presiding Justice Shinn, it is said: ". . . if the evidence clearly establishes that the children will have equal advantages in the home of the mother and that the mother has demonstrated her ability and willingness to perform her maternal duties properly, the law requires that young children be placed with her.

. . . . . . . . . . . . .

". . . Where the court finds that 'other things' are equal, young children are invariably given into the custody of their mother. We say 'invariably' because we have not found in our reported cases a single instance in which the custody of young children has been awarded to their father upon evidence that the mother was a fit and proper person to have their custody and was able to give them advantages equal to those that they would enjoy in the home of the father. We need not elaborate upon the reasons which underlie this sound policy of the law. They are stated with great clarity and complete-

ness in many cases, and we shall therefore refer only to *Juri v. Juri,* 69 Cal.App.2d 773 [160 P.2d 73], and cases therein cited."

In the instant case the trial court in rendering its decision at the conclusion of the hearing said: "Of course, *the sole question* here is what is for the best interests of the child, there being no showing that either parent is actually unfit." (Italics supplied.) Contrary to the statement of the court the rule is not so limited as was announced by it. The true rule is as stated in *Washburn* v. *Washburn,* 49 Cal.App.2d 581, page 587 [122 P.2d 96]: "In custody cases the underlying principle, paramount to all others, is the welfare and best interests of the child. In no way in conflict with this rule is another, equally well established, that once a court has decreed it there may be no change in the child's custody except where adequate cause therefor arises out of *changed conditions.* (Italics supplied.) This principle is based on the idea not only that the stability of the home life of the children is an important and vital factor, but also that the turmoil of litigation must somewhere end. Short of a modification based upon adequate grounds, the decree awarding custody is conclusive and settled beyond recall other than by appeal." (See also *Foster* v. *Foster,* 8 Cal.2d 719, 726-727 [68 P.2d 719].)

Under the factual circumstances of this case there would have been involved as great a change and a want of stability for the boy to be transferred from the grandmother's home to his father's new home as there was to his mother's new home. In fact, the boy on the date the order was made had been in his mother's new home for a month and a half, and accordingly his contemplated transfer was not from the grandmother's home but from the mother's home to the father's new family and home. Presumably the boy is still in his mother's home as the appeal herein acted as a stay. (*In re Barr,* 39 Cal.2d 26 [243 P.2d 787]—May 13, 1952), and accordingly an affirmance will now involve a transfer of the boy from his mother's home where he has been since December 30, 1950.

The law of nature as well as the law of man rebels at the separation of a brother and sister from one another and— doubly so—from a mother unless indeed very good cause is shown of which there is none here. The exercise of the legal discretion confided to trial judges may be exercised only when it is bottomed upon basic facts. Upon this record there is nothing to indicate that the boy was not happy in his mother's home and nothing to indicate, as the majority opinion

concedes, that he will be happy or his welfare promoted in his father's home living with a stepmother, a stepbrother and a stepsister. For the reasons indicated I think there should be a reversal.

A petition for a rehearing was denied August 18, 1952. Hanson, J. pro tem., was of the opinion that the petition should be granted.

Appellant's petition for a hearing by the Supreme Court was denied September 18, 1952.