[Civ. No. 15207. First Dist., Div. One. Jan. 28, 1953.]

GLENN FRAZIER, Respondent, v. MARGARET FRAZIER, Appellant.

Alfred E. Graziani and Raymond N. Baker for Appellant.

A. F. Bray, Jr., and John F. Baldwin for Respondent.

PETERS, P. J.—In a contested action in which both parties sought a divorce, the trial court granted the divorce to the husband on the ground of extreme cruelty, divided the community property between the parties, and divided between the parents the custody of their two children, awarding the custody of the boy, aged 8, to the mother, and the custody of their girl, aged 2, to the father. On this appeal by the wife her sole contention is that she, having been found to be a fit and proper custodian for the boy, was entitled, as a matter of law, to the custody of the daughter, a child of tender years. The appeal lacks merit.

The trial court found that the husband was entitled to the divorce, finding that the wife has "nagged and harassed" her husband; has "yelled and shouted" at the two children; that she "has constantly criticized" her husband's relatives; that she has "repeatedly refused to join organizations and to go places with" her husband; and that she "has threatened to commit suicide and to, at the same time, kill the two children."

The court then found that the daughter of the parties was presently in the custody of the father; that he "is a fit and proper parent to have the care, custody and control of said minor daughter; that it is for the best interest of said minor daughter to remain in the care, custody and control" of respondent. The court then made an identical finding in reference to the son of the parties, substituting appellant for respondent, and awarded the custody of the son to appellant. She was also awarded $75 a month for the son's support.

The argument of appellant is predicated upon the language of section 138, subdivision 2, of the Civil Code. Section 138, subdivision 1, provides that in awarding custody the court

is to be guided "By what appears to be for the best interest of the child in respect to its temporal and its mental and moral welfare . . ." Subdivision 2 provides that "As between parents adversely claiming the custody, neither parent is entitled to it as of right; but other things being equal, if the child is of tender years, it should be given to the mother . . ." It is the theory of appellant that since she has been found to be a fit and proper person to have custody of the boy, other things have been found to be "equal" within the meaning of section 138, and therefore, she, as a matter of law, is entitled to have the custody of the girl awarded to her. This theory not only disregards the wide discretion of the trial court in such cases but disregards the evidence upon which the trial court made this somewhat unusual award of custody.

These parties were married in 1941, and at the time of trial (March and April, 1951) were in their middle thirties. Both parties testified that appellant was pregnant at the time of marriage and that the boy was born shortly thereafter. This caused respondent to refer to the boy as his wife's child, stating that she should take care of him. The parties lived in San Francisco for about a year after the marriage, and then the husband was called into the Army where he served until 1945. During this Army period appellant and the boy lived with appellant's mother in San Francisco. When respondent returned from the Army the parties moved to Oakland where the girl was born in December of 1948. In 1950 they moved to a home they had bought in Concord, Contra Costa County, near the respondent's place of employment.

Neither party got along with their respective mothers-in-law, appellant complaining because they were moving farther and farther away from her mother who lived in San Francisco, and also complaining that respondent's mother, who lived in Oakland, unduly interfered with her. The respondent and his witnesses testified as to the various acts upon which the finding of cruelty is predicated, and although this testimony was contradicted by appellant and her witnesses, the trial court believed respondent and his witnesses, and the finding is supported by his and other testimony. This testimony is now relevant only insofar as it may indicate the attitude of the parents towards the two children.

The respondent testified that when he returned from the service in 1945 the boy was undisciplined and unruly; that appellant would make adverse comments about his relatives

before the boy; that his wife would not allow the child to play with other children. However, until the girl was born in December of 1948, the parties got along fairly well together.

There is substantial evidence that appellant did not want, and feared having, another child, and that, after she became pregnant, she made several unsuccessful attempts to induce a miscarriage. Except for securing a crib, she made no other preparations for the arrival of the child. When the daughter was born appellant told respondent that the baby was "his" and that he should take care of her. The evidence shows that respondent, when at home, assumed the care of this child, feeding and bathing her. The respondent and his witnesses also testified that appellant was a poor housekeeper, that while under her care the boy was "grubby," and the baby "kept dirty." They also testified that the appellant would scream at the children, and that, as a result of her treatment, the baby became frightened and unhappy and would cringe and cry like a "scared rabbit."

About four months after the birth of the daughter, appellant, for three or four days before her recurring menstrual periods, began to suffer from severe pain and cramps, and from severe headaches. Severe depression accompanied these conditions. Appellant was uncooperative about seeking medical assistance, and what doctors she did see were unable to render much assistance. In July of 1949 appellant took an excessive number of pills given to her by a doctor to kill pain. This necessitated the calling of an ambulance and the police by a neighbor. The respondent testified that appellant had left a suicide note, but this was denied by appellant. The next month, however, being August of 1949, appellant admitted that she tried to commit suicide by swallowing the contents of a bottle of a sedative, and again the police were called. In October or November of 1949 appellant had an hysterical attack and the police were again called. According to respondent, during these sick periods appellant made frequent threats to kill the children and herself. Appellant denied these threats, but did admit the suicide attempt above mentioned, and also admitted that on another occasion she intended to kill herself with a butcher knife, but was restrained by respondent.

In May of 1950 appellant had another severe attack. Upon her refusal to see a doctor, respondent took her, at her request, to her mother's home in San Francisco. She requested

that the children not be brought along. Respondent told appellant to see a doctor and to get an operation if one were needed. Appellant did go to a new doctor who ascertained that appellant had a tumor and recommended an immediate operation. Respondent approved of the operation and it was performed on June 9, 1950, a tumor and most of the female organs being removed. Appellant can have no more children.

Before the operation the respondent informed appellant that he was going to secure a divorce, but he took appellant to the hospital for the operation, having authorized it and, to some extent, having arranged for it.

After the separation, the respondent took the two children and went to live with his mother in Oakland. After appellant had been operated on he sent the boy over to visit her and she did not send him back, keeping him at her mother's home where she was staying. Appellant conceded that respondent and his mother, on the whole, gave the girl proper care. Respondent's witnesses testified that since the baby has been removed from appellant's care she is less nervous, more friendly and is now plump, jolly and good natured, in contrast to her frightened nervous condition under appellant's care. The appellant visits her daughter once every two weeks. The respective homes where the two children are kept are adequate. The respondent requested custody of both children but stated that if their custody was to be divided he preferred having his daughter, because she had been cared for by him since her birth, while the boy had been separated from him during the war. The appellant indicated no preference, requesting custody of both. Appellant's testimony is uncontradicted that since her operation she has recovered completely from the mental and physical condition that existed prior to the separation.

It is appellant's theory that the "tender years" provision of subdivision 2 of section 138 of the Civil Code giving preference to the mother is here applicable and that the trial court abused its discretion in awarding the custody of the daughter to respondent. Appellant claims that "other things" were "equal" because, in awarding custody the trial court must consider only her present fitness and could not consider events that occurred during the period she was sick, inasmuch as she has now fully recovered. She also places considerable reliance on the finding that she is a "fit and proper" person to have custody of the boy. In support of these con-

tentions appellant places her greatest reliance on the cases of *Bemis* v. *Bemis,* 89 Cal.App.2d 80 [200 P.2d 84], and *Wilkinson* v. *Wilkinson,* 105 Cal.App.2d 392 [233 P.2d 639]. The Bemis case involved a somewhat unusual factual situation. By the divorce decree the father was awarded custody of the son, aged 5½, and of the daughter, aged 7. The mother was not then found unfit. The father put the children into an unsatisfactory boarding school, and, when they became ill, voluntarily surrendered them to the mother. The uncontradicted evidence was to the effect that the mother gave the children a fine home and excellent care. The mother petitioned for a modification of the custody order which was denied by the trial court. The appellate court reversed, holding that the mother should have been awarded custody of both children. In so holding, the court used some strong language to the effect that when the facts make section 138, subdivision 2, of the Civil Code applicable, ''it is not within the discretion of the court to ignore it,'' and ''Where the court finds that 'other things' are equal, young children are invariably given into the custody of their mother'' (p. 90), but that was not the basis of the court's decision. The court placed its greatest emphasis on the fact that because the father had transferred the children to the care of the mother, the requested modification of the custody order was intended not to change but to preserve the status quo as it existed before the request was filed. Thus the appellate court emphasized that the denial of the request for a modification by the trial court resulted in a complete change in the children's mode of living, a factor always given great weight by the courts.

*Wilkinson* v. *Wilkinson,* 105 Cal.App.2d 392 [233 P.2d 639], and the somewhat similar case of *Robertson* v. *Robertson,* 72 Cal.App.2d 129 [164 P.2d 52], are not in point. Both involved contests between grandparents and a mother. In both cases the court applied the rule that before custody can be awarded a grandparent as against a parent there must be a finding supported by the evidence that the parent is unfit. Both cases do contain language emphasizing the importance of a mother's care for small children. The Wilkinson case also emphasized the rule that it is present and not past fitness that is relevant, and that past acts are admissible only insofar as they tend to shown present fitness. That rule has frequently been stated. (*Prouty* v. *Prouty,* 16 Cal.2d 190 [105 P.2d 295]; *Guardianship of Jones,* 86 Cal.

App.2d 35 [194 P.2d 141]; *Guardianship of Casad,* 106 Cal. App.2d 134 [234 P.2d 647].)

There are also a few cases of which *Washburn* v. *Washburn,* 49 Cal.App.2d 581 [122 P.2d 96], is typical which have reversed awards of custody to fathers where such awards were made on petitions to modify existing orders awarding custody to the mothers. The rationale of those cases is that before a modifying order is justified there must be evidence of a change in circumstances, and that there was no such showing there made. These cases are not in point.

The respondent relies on the well settled rule that where the contest is between opposing parents, both fit, the "tender years" provision of subdivision 2 of section 138 of the Civil Code must be read with the provisions of subdivision 1 of the section making the welfare of the child a factor that must be considered. The trial court, when faced with two fit parents, must give consideration to the best interests of the child, and in determining that fact has a broad discretion in determining whether other things are equal. Cases emphasizing the broad discretion existing in the trial court are legion. The following are typical: *Hamilton* v. *Hamilton,* 104 Cal. App.2d 111 [231 P.2d 69]; *Bush* v. *Bush,* 81 Cal.App.2d 695 [185 P.2d 38]; *Munson* v. *Munson,* 27 Cal.2d 659 [166 P.2d 268]; *Morgan* v. *Morgan,* 103 Cal.App.2d 776 [230 P.2d 130]; *Phillips* v. *Phillips,* 48 Cal.App.2d 404 [119 P.2d 736]; *Priest* v. *Priest,* 90 Cal.App.2d 185 [202 P.2d 561]; *Noon* v. *Noon,* 84 Cal.App.2d 374 [191 P.2d 35].

In exercising this discretion, and in evaluating the best interests of the child against the "tender years" provision of the section, the courts are entitled to consider the status quo. Thus in *Fine* v. *Denny,* 111 Cal.App.2d 402 [244 P.2d 983], the appellate court refused to upset an award to the father of the custody of a 7-year-old boy, where the father had had custody of the child for four years. Much of what is said in the opinion is applicable here. At page 403 appears the following:

"The mother's position on appeal is that since the evidence shows that both parents are equally fit and proper persons and each has a suitable home it was an abuse of the court's discretion to award custody of a boy of tender years to the father. In taking this position the mother relies upon that portion of section 138, Civil Code, which provides that 'other things

being equal, if the child is of tender years, it should be given to the mother.'

"In the application of this statutory provision the court has a wide discretion and in determining whether other things are equal the primary consideration is what will promote the best interests of the child. [Citing cases.] Here in determining the best interest of the child the trial court was not confined to the question of the fitness of each parent and the suitability of each home, but was entitled to give due weight to the fact that from a very tender age Edward was accustomed to living in the custody of his father, and with only the 14-month interruption when his mother refused to return him to his familiar home, his father had cared for him to the exclusion of the mother from age 2 to age 6, from 1946 to 1951. We cannot be insensitive to the fact, to which we must assume the trial court gave proper consideration, 'that the stability of the home life of the children is an important and vital factor' (*Washburn* v. *Washburn,* 49 Cal.App.2d 581, 587 [122 P.2d 96]) and 'that a change of custody would disturb the child's established mode of living.' (*Bemis* v. *Bemis,* 89 Cal.App.2d 80, 91 [200 P.2d 84].) In view of this factor we cannot hold that the trial judge in continuing Edward's custody in the father was not entitled to find that other things were not equal, and that it was to Edward's best interest not to have his accustomed mode of living and home environment again abruptly changed." The case is directly in point.

Another case in point is *Norton* v. *Norton,* 112 Cal.App.2d 358 [245 P.2d 1108]. There a modification awarding a 9-year-old boy to the father was affirmed. The court frankly admitted that both parents were fit and both homes were proper, but held that the award was justifiable because it kept the boy with his father where he had been in the past. It should be mentioned that there was a strong dissent in this case containing arguments in favor of the mother that are similar to the arguments here advanced, but the Supreme Court denied a hearing without a dissenting vote.

In *Juri* v. *Juri,* 61 Cal.App.2d 815 [143 P.2d 708] (same case on subsequent appeal, 69 Cal.App.2d 773 [160 P.2d 73]), the court affirmed an award of children aged 2 and 3 respectively to the father, even though the court was extremely sympathetic to the mother. The court stated (p. 820):

"Under the facts and circumstances of the present case and the statement by the trial court that both parties were 'proper persons to have the custody of the children,' which

was in effect a ruling that everything was equal as between the parents, we think that, in view of the provisions of section 138 of the Civil Code, and the tender years of the children, the trial court, in the exercise of its discretion, should have awarded the custody of said children to the mother.

"However, this court in the case of *Phillips* v. *Phillips,* 48 Cal.App.2d 404 [119 P.2d 736], held that the qualifying clause of subsection (2) of said section 138, 'other things being equal,' leaves a large measure of discretion with the trial court. Here the trial court, in the exercise of its discretion, has impliedly found that although the mother is a fit and proper person, the best interests of the children will be served by dividing their custody between their parents.

"As we are unable to say that said court abused its discretion, we are constrained to sustain the order from which both parents have appealed."

In the instant case we cannot say that the trial court abused its discretion. It was entitled to consider past acts insofar as they reflected or had a tendency to reflect present fitness. It had the right to consider that the daughter was, so far as the mother is concerned, an unwanted child; that since birth the father has assumed the main burden of the child; that admittedly the father has had sole custody and care of the child since the separation of the parties in May of 1950, and that to award her custody to the mother would disturb the status quo. The court could also consider the change in the baby's demeanor since the father has had her custody. While the evidence is to the effect that appellant's failure as a mother was largely due to a sickness from which she has now recovered, the trial court was entitled to consider that the trial of this case was but 10 months from the date of the operation, and that it might well be to the best interests of the child to keep her from a mother whose grave physical and emotional condition had been brought to a focus by the birth of the child. The court, under such circumstances, might well have felt that the boy, who had been largely brought up by the wife and her mother, should be kept by his mother, while the best interests of the girl required that she remain with the father. The determination to award the girl to the father was well within the discretion of the trial court.

The judgment appealed from is affirmed.

Wood (Fred B.), J., and Dooling, J. assigned, concurred.