[Civ. No. 760.   First Appellate District.—April 12, 1910.]

In the Matter of the Estate and Guardianship of JUANITA
ALVERNA LINDNER, a Minor.   MADGE MUTH, Ap-
pellant, v. EMMA DOMENICI, Respondent.

PARENT AND CHILD—ESTATE AND GUARDIANSHIP OF INFANT—PETITION
OF   MOTHER   REFUSED—UNFITNESS—FINDING   UNSUSTAINED—RE-
VERSAL UPON APPEAL.—Upon appeal by a mother, after the death
of the father, from an order refusing her petition for appointment
as guardian of the person and estate of her young child three
years of age, upon a finding of her unfitness to have the care and
custody of the child, where the evidence fails to sustain such find-
ing, the judgment and order denying her petition must be reversed.

ID.—RIGHT OF MOTHER TO CUSTODY OF CHILD.—Upon the death of the
father, the mother is *prima facie* entitled to the custody of her
young child, and cannot be deprived thereof, unless shown to
be unfit by sufficient testimony.   As against everyone except the
father, the mother is by the law of God and man entitled as of
right to the custody of her own child, and cannot be deprived
thereof except upon a clear showing of her unfitness for the exer-
cise of such right.

ID.—PRIOR RIGHT OF PARENTS.—The prior right of parents to the cus-
tody of their children under fourteen years of age cannot be dis-
regarded except upon the most compelling reasons proved and sus-
tained by the court.

ID.—WIFE'S   SUIT   FOR   DIVORCE—TEMPORARY   CUSTODY   OF   CHILD—
PATERNAL   UNCLE   AND   AUNT—EXPLANATION   OF   CONDITION   OF
CHILD.—Where pending the wife's suit for divorce the husband
had placed the child with a paternal uncle, and by temporary
agreement sanctioned by the court the husband was allowed to
place it with its paternal aunt, the unkempt condition of the child
testified to by the aunt was explained by its coming to her from
the custody of its uncle and not from the wife, who testified that
she always kept it clean.

ID.—FAILURE OF MOTHER FREQUENTLY TO VISIT CHILD EXPLAINED.—
The fact the mother seldom visited the child during the life of
the husband was explained by advice of her counsel not to visit
it until she got her interlocutory decree, which was obtained two
days before the death of the husband, after which she tried through
her affection for the child to regain its custody.

ID.—ABSENCE OF SHOWING AS TO MORAL UNFITNESS—HEALTH OF CHILD.
*Held*, that there was no testimony that the child had ever been
ill, or that anything existed in the life of the mother that would
militate against the moral well-being of the child.

ID.—GENERAL STATEMENTS BY UNFRIENDLY WITNESSES—OPPORTUNITIES OF OBSERVATION NOT SHOWN.—General statements by manifestly unfriendly witnesses, who are the brothers and sisters of the divorced husband, to the effect that the child was always filthy and that the mother did not keep her house clean, without any showing as to the opportunities possessed by them for real knowledge, do not meet the requirements of such evidence.

ID.—FINDING UNSUPPORTED.—Such general statements are not sufficient to warrant a finding that the mother was not a fit and proper person to have the care and custody of her own baby, there not being one word tending to show any loose or immoral conduct upon her part, or any neglect that has ever injured the health or physical well-being of the child.

ID.—RIGHT OF MOTHER TO REAR HER OWN OFFSPRING.—A mother who is both capable and willing and anxious to rear her own offspring should not be deprived of the opportunity thus to discharge the duty she owes to the child, without a clear showing of unfitness for the trust.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco, and from an order denying a new trial. Geo. A. Sturtevant, Judge.

The facts are stated in the opinion of the court.

McGowan, Squires & Westlake, for Appellant.

Hugo D. Newhouse, for Respondent.

HALL, J.—This is an appeal from a judgment denying appellant's petition to be appointed guardian of the person and estate of her own child and the order denying her motion for a new trial.

The court found that the petitioner was not a fit, proper or competent person to discharge the duties of guardianship or to be appointed guardian of said minor, who was then less than three years of age. The father of said child died before this proceeding was instituted, so unless the evidence fairly shows that the mother was not a fit or proper person to have the care and custody of her own child the judgment and order must be reversed.

Upon the death of the father the mother is prima facie entitled to the custody of her young child, and cannot be deprived of such custody unless shown to be unfit by suffi-

13 Cal. App.—14

cient testimony. (*In re Campbell*, 130 Cal. 383, [62 Pac. 613]; *Guardianship of Salter*, 142 Cal. 412, [76 Pac. 51].)

The prior right of parents to the custody of their children under fourteen years of age "cannot be disregarded except on the most compelling reasons proven and sustained before the court." (21 Cyc. 34.)

The petition of appellant is in the usual form, and showed that the child had an estate of the value of $500, and was then in the custody of Emma Domenici. When the matter came on for hearing Emma Domenici appeared with the child but filed no answer to the petition. The matter was heard upon three different days. At no time was it suggested by anyone that petitioner was in any way immoral or of bad habits. Prior to the death of the father of the child petitioner had brought a suit for divorce from him, and on the twenty-eighth day of January, 1907, an interlocutory decree of divorce was granted to her, in which the custody of the child was awarded to its father until further order of the court. The awarding of the custody of the child was in accordance with an agreement between the father and mother which contemplated that the child should be placed with its paternal aunt, Emma Domenici, but which likewise provided that such custody should be temporary only. The father died January 30, 1907, but the child had been given into his custody under the agreement December 24, 1906, and subsequently by him placed with Mrs. Domenici. After the death of the father petitioner remarried, and is now the wife of George Muth, and is able to provide for the child. The evidence taken upon the first and second days of the hearing disclosed that petitioner had visited the child but once since giving it into the care of its father, but nothing else was shown to her prejudice. Indeed, at the close of the second day's session the learned judge presiding expressed the view that this was a most unnatural act, and that she (petitioner) "thinks more of the $500 that is in sight in the estate than she does of the person of the child. That is the only matter that is facing me at the present time."

At the next hearing it was shown without contradiction by letters that passed between her and her counsel, Frank McGowan, Esq., that she was advised by him that she had better not visit the child until the court rendered judgment

in the divorce suit. This occurred January 28, 1907. In February petitioner did call to see her child, and in March consulted with Mr. McGowan with a view to regaining its custody. She was then taken ill, but upon leaving her bed wrote to Mr. McGowan urging that steps be taken to get for her the child. Negotiations were at once commenced and carried on by Mr. McGowan, for her, with Mrs. Domenici and the attorney that had represented Mr. Lindner in the divorce case, until finally the petition was filed.

Several letters written by Mrs. Muth to her attorney were read in evidence. None of them refer to the money or estate of the child at all, but do show love and anxiety for the child. They are all expressed in good English, correctly spelled and show the writer to have a fairly good education. These letters and the evidence of Mr. McGowan and other evidence given after the intimation from the court as to its views fully explain in a satisfactory way the reasons why petitioner did not more frequently visit her child.

At the close of the hearing some evidence was given intended to show that petitioner had neglected the child. Emma Domenici testified that ''When I got the baby we had to give her a bath. She was filthy. Her hair was not combed. . . . Her hair was matted.'' But it was shown without contradiction that the baby had for a week or more preceding been in the custody of its paternal uncle and not with its mother at all. She was therefore not responsible for this condition. Evidence was also given by the sister and brother of Mrs. Domenici in general terms that the baby was always filthy and dirty, and that petitioner did not keep her house clean. How frequently they visited the house of petitioner or what opportunities they had of really knowing what care she gave the baby was not shown.

Petitioner, after this testimony was given, again took the witness stand and denied its truth. She testified that she bathed the baby every day and always kept it clean.

There was not one word of testimony that the child had ever been ill, or that anything existed in the life of petitioner that would militate against the moral well-being of the child.

We fully recognize the rule that where there is any substantial evidence to support the finding of the trial court this court cannot interfere. But we likewise recognize that

as against everyone except the father the mother is by the law of God and man entitled as of right to the custody of her own child, and of this right she cannot be deprived except upon a clear showing of her unfitness for the exercise of such right.

General statements by manifestly unfriendly witnesses that the child was always filthy and that the mother did not keep her house clean, without any showing as to the opportunities for real knowledge possessed by such witnesses, do not meet the requirements for such a showing.

The general statements made by the brother and sisters of her divorced husband to the effect that she did not keep the child clean are not sufficient to warrant a finding that she is not a fit and proper person to have the care and custody of her own baby, there not being one word tending to show any loose or immoral conduct upon her part, or any neglect that has ever injured the health or physical well-being of the child. A mother who is both capable and anxious to rear her own offspring should not be deprived of the opportunity to thus discharge the duty she owes to the child, without a clear showing of unfitness for the trust.

The ends of justice require that this case be remanded for a new trial, to the end that a careful and full investigation may be had as to whether or not this mother should be deprived of the right to rear and care for her own child. The judgment and order are reversed.

Kerrigan, J., and Cooper, P. J., concurred.