[Civ. No. 15976. Second Dist., Div. One. Mar. 16, 1948.]

ELMA H. NOON, Appellant, v. JAMES E. NOON, Respondent.

James E. Minds and Maurice E. Hibbert for Appellant.

Austin & Austin and Irving P. Austin for Respondent.

WHITE, J.—This is an appeal from an order of the Superior Court of Los Angeles County determining the custody of minor children. The mother secured an interlocutory judgment of divorce on January 15, 1946, in which judgment it was provided "that the sole care, custody and control of the two minor children of the parties is awarded to the plaintiff, subject to the right of reasonable visitation on the part of defendant; the defendant shall have the right of visitation with his children on the first and third Sundays of each month, at such hours as will not interfere with their proper rest and feeding."

On August 5, 1946, defendant father applied to the court for a modification of the interlocutory judgment so as to grant him custody of said minor children "with the right of reasonable visitation in plaintiff," and that the "provision in said judgment for alimony to plaintiff be modified by discontinuance of any award of alimony." In support of his application for change of custody of the minor children, defendant father filed an affidavit wherein he alleged:

"That the plaintiff has not had the physical custody of said children since the date of said judgment, but has left them at the Boys and Girls Aid Society, 760 E. Mountain View Street, Altadena, California; that at said home said

children have certain vacation periods and week ends at which times they are permitted by the regulations to leave the environment of the said home. That plaintiff has refused to permit defendant to take said children on any other time than that specified in said judgment and on many of said periods has left said children at said home and has not provided any outside recreation for them. That the plaintiff does not desire and has no intention of taking physical custody of said children and making a home for them; that defendant is now residing with his mother, Mrs. Lena H. Noon, at 712 N. Mayo Avenue, Compton, California, and is in a position to make a good home for said children under the care and supervision of his said Mother, and is able to provide the home atmosphere which said children are not now receiving at said home.

"That said judgment provided that plaintiff pay to defendant $110.00 per month for alimony and for support money for said children. That at the time said order was made the plaintiff was not working; that at the present time plaintiff is employed as a stenographer at a net salary of $150.00 per month."

Plaintiff mother filed a counteraffidavit in which she averred that the two children, James Michael, a son, aged approximately 8 years, and Nancy Ellen, a daughter, of the approximate age of 4 years, were enrolled in the Boys and Girls Aid Society School in Altadena, a Los Angeles County approved home for children. That she was receiving from defendant the sum of $110 per month for the support of herself and the two children; that by reason of the amount of such award she was required to work, and that her net earnings were approximately $35 per week. "That defendant has consistently endeavored to undermine plaintiff's control over said children and for a time did upset plaintiff's control over James Michael, the older of the two children, telling said child that the said Boys and Girls Aid Society was not a good place for him to remain and that he, the defendant father, would get him out."

It was further charged in plaintiff mother's counter-affidavit "That said defendant has by devious means attempted to force plaintiff to have the children removed from said Boys and Girls Aid Society even to the extent of withholding support money from her until a contempt citation was brought in this court to enforce the payment of said

support money." The counteraffidavit further charged that the defendant was not a fit and proper person to have either partial or full custody of said children; that "his influence on the children whenever they are with him has been to continuously talk down the character and deportment of plaintiff to said children and to make them unhappy and dissatisfied in any place except in the home of defendant's mother; that the said actions on the part of the defendant have caused the elder child to be upset emotionally upon his return to the home and he has required special handling by the persons in charge of the supervision of said child at the Boys and Girls Aid Society whenever he has been away with his father." The mother further averred that should custody of the children be granted to defendant father and they be placed by him with his mother, "such action will only tend to permit said defendant's mother to continue to undermine the children's love for the plaintiff."

In her counteraffidavit plaintiff mother requested that should the court be in doubt about the "qualifications and surroundings in which said children are being nurtured, that a duly qualified investigator of this court be appointed to investigate said surroundings and report back to the court together with her recommendations."

The record herein comes to us upon a clerk's transcript, and we are not apprised therein as to what occurred when the order to show cause, issued pursuant to the foregoing affidavit of defendant husband, came on for hearing; but from the briefs filed herein it appears to be conceded that such hearing was had in department 8 of the superior court on August 29, 1946, and that both parties, with their counsel, were present. And in view of the fact that plaintiff mother, in her counteraffidavit requested the appointment of a "duly qualified investigator of this court," we feel justified in adopting defendant father's statement made in his brief that "by stipulation the matter was referred to a court assistant."

In any event, the record before us does disclose that on October 15, 1946, the matter was transferred to department 14. After reciting the presence in court of both parties and their respective attorneys, the minute order entered, so far as here pertinent, reads as follows:

"The parents on alternate week-ends may visit the minor children in the school-home and that the defendant may take

the two minor children to his home one week-end a month from Saturday at 10:00 A. M. to Sunday at 5:00 P. M., beginning October 19, 1946, and plaintiff may take the children for the same period on the next week-end they are permitted to leave the school. Plaintiff and defendant have visitation on alternate Sundays on the week-ends the children remain in the school. At the end of the present school term, defendant is to be granted the full care, custody and control of the child, James Michael. Said child to reside thereafter with his father in the paternal grandparent's home. The care, custody and control of Nancy is to continue with the plaintiff, and the defendant shall pay to the plaintiff the sum of $50.00 per month for the child's support. Plaintiff may have visitation with James Michael at all reasonable times and may take him to her home or to home of his maternal grandparents one week-end a month from 10:00 A. M. Saturday to 6:00 P. M. Sunday, providing she notifies the defendant or the paternal grandmother in advance. Defendant may have visitation with Nancy one week-end a month and take her to his parents' home from 10:00 A. M. Saturday to 6:00 P. M. Sunday providing it is not the week-end that Michael is away from home. Each parent shall have both children at the same time for one-half of each Holiday vacation period as agreed between the parties. Neither parent shall say anything derogatory of the other parent in the presence of the children. . . .''

After providing for the payment by defendant of plaintiff's attorney's fee, the minute order proceeds as follows: "So long as the children remain in school, defendant is directed to pay the expense of the children at the Institution. Defendant is ordered to pay $1.00 per month for her (wife's) support."

■ Appellant's first contention is that the mother is the natural custodian of a child of tender years, and in the absence of very compelling circumstances should be awarded its custody. It is true that "[a]s between parents adversely claiming the custody, neither parent is entitled to it as of right, but other things being equal if the child is of tender years, it should be given to the mother. . . ." (Civ. Code, § 138, subpar. 2.) But a veritable forest of cases uniformly hold that the paramount consideration is the welfare of the child, and that in making an award of custody the court is to be guided "[b]y what appears to be for the best interest of the

child in respect to its temporal and its mental and moral welfare.'' (Civ. Code, § 138, subpar. 1.) Equally well-established is the rule that under the statute just cited the trial court is allowed a wide latitude in the exercise of its discretion, which must be exercised on the basis of the best interest of the child and not upon the desires of the parties. Unless a clear case of abuse of discretion is shown, an appellate court will not interfere with the determination made by the trial court. (*Crater* v. *Crater*, 135 Cal. 633, 634, 635 [67 P. 1049]; *Kelly* v. *Kelly*, 75 Cal.App.2d 408, 410 [171 P.2d 95]; *Norris* v. *Norris*, 50 Cal.App.2d 726, 731 [123 P.2d 847]; *Runsvold* v. *Runsvold*, 61 Cal.App.2d 731, 732, 733 [143 P.2d 746]; *Munson* v. *Munson*, 27 Cal.2d 659, 666 [166 P.2d 268].)

 Appellant's contention that the interlocutory judgment of divorce granted January 11, 1946, wherein she was awarded custody of both children, conclusively determined her fitness to have such custody as of that date, is sound. However, no attack is made upon appellant's fitness in the proceeding now before us. Respondent bases his motion for modification upon the ground that because of the reasons advanced by him in his supporting affidavit, as well as the report of the court investigator, the best interests of the children would be served by granting to him their custody.

 Appellant next asserts that an award of custody once made may not be changed in the absence of changed conditions or unusual circumstances. We are impressed that the supporting affidavits of both parties herein show a change of circumstances, in that although appellant mother was awarded custody of the children, she was not exercising actual physical custody over them, but had enrolled them as resident students at the Boys and Girls Aid Society School; that she left the children at the school during certain vacation periods when they were permitted to leave the school and be with her in her own home, while respondent contended that he was in a position to provide a good home for the children at the residence of his mother, thereby affording them a normal home atmosphere which allegedly they were not receiving at the institution where they were quartered.

And in any event, the so-called ''changed circumstances'' rule is not inflexible, nor without possible exceptions. As was said by this court in *Kelly* v. *Kelly*, *supra*, at page 415, ''It seems to us that the question of 'changed circumstances'

is but another form of evidence which the court may consider in the exercise of its discretion to hear and decide the question of modification of custody orders previously made. But notwithstanding 'changed circumstances,' there can be no doubt that once jurisdiction attaches to grant a divorce and award custody of the minor children of the marriage, our statute provides that such jurisdiction is continuing and the power to amend, modify or annul an award of custody as existing conditions demand ever after remains. (*Foster* v. *Foster, supra,* p. 726 [8 Cal.2d 719 (68 P.2d 719)].) The reasoning which dictated adoption by the courts of the so-called rule of 'changed circumstances' is thus epitomized in *Foster* v. *Foster, supra,* at page 727, where the court, after announcing the rule of law we have just mentioned, stated: ' "But this does not mean the parties to such litigation may after a court has once heard evidence upon the subject of their fitness to act and ruled upon the question, immediately again invoke the powers of the court to have it inquire into the same or other facts existing at the time of or prior to the former decree. Such holding would lay a foundation for interminable and vexatious litigation. The rule is stated to be that to justify a modification there must be a change of circumstances arising after the original decree is entered, or at least showing that the facts were unknown to the party urging them at the time of the prior order, and could not with due diligence have been ascertained (19 Cor.Jur. 350.) " ' The so-called rule means only that the action of the court in refusing to modify an order of custody unless there is a showing of 'changed circumstances' does not amount to an abuse of discretion."

We have hereinbefore set forth the contentions made by both parties to this proceeding in their respective affidavits, and they will not be repeated here. Suffice it to say that there was thereby presented to the court for determination the question of what would be for the best interests of the children, and such determination is addressed to the sound discretion of the trial court, subject, of course, to the qualifications found in section 138, subparagraph 2, of the Civil Code. And it is not a question of whether we agree with the action taken by the trial court, but our sole duty is to determine whether the record is so barren of substantial evidence to support the order made that the same should be regarded as a clear abuse of discretion. The record before

us discloses no such abuse of discretion as would authorize this court to reverse the decision of the trial court.

As her next ground for reversal of the order, appellant earnestly asserts that "modification of an order of custody may not be based solely upon the recommendations of the court investigator." To support her claim in this regard, appellant relies principally upon *Fewel* v. *Fewel*, 23 Cal.2d 431 [144 P.2d 592]. But we are persuaded that no analogy can be drawn between the circumstances prevailing in the cited case and those present in the case at bar. In the Fewel case the court investigator was appointed on the court's own motion and not by stipulation. The report of the investigator was received by the court in chambers and was not imparted to counsel. The court refused to hear evidence on the part of plaintiff and made the order of modification exclusively on the recommendation of the court investigator. When the court referred the matter on its own motion to a court investigator the parties were instructed to return upon a subsequent date "without witnesses because the report of the investigator will be final." When the motion was again called for hearing the court immediately stated, "We are going to adopt the recommendation of the investigator, gentlemen, I will say to you." Such was the procedure which the Supreme Court stated "cannot be sustained" because it deprived plaintiff of a fair trial in open court, and deprived her of the right to produce and have consideration given to material evidence. She was also precluded from cross-examination of adverse witnesses.

In the case now engaging our attention, appellant in her answering affidavit requested the appointment of a court investigator, and it is conceded that the investigator was appointed upon stipulation of the parties. Respondent asserts, and it is not denied by appellant, that "the parties further stipulated at the time the matter was referred to the investigator, that the report of the investigator might be received in evidence to be supplemented by further evidence if the parties so desired."

Appellant has not produced in this court the contents of the stipulation in question, and we feel justified in assuming that the rules of department 8 of the Superior Court of Los Angeles County, where domestic relations matters are heard, requiring a stipulation such as respondent contends was entered into, were followed, and that the usual stipulation

prevailed herein. The parties had previously filed their affidavits, which, together with the report of the investigator, were before the court. There is no showing that any request was made by appellant to present additional evidence, to file further affidavits, or that she was denied the right to cross-examine the court investigator. It is true that the court indorsed upon the investigator's report the words "Approved and so ordered," but in the case of *Fewel* v. *Fewel, supra,* relied upon by appellant, the Supreme Court, at pages 434 and 435, expressly states that the trial court may "direct its assistant to ascertain and report evidence and make recommendations based thereon"; That "they are far more than 'messengers' of the judge, without 'province to recommend a decision.' "

The report of the investigator herein was presented in affidavit form, and the record herein shows no timely demand by appellant that such investigator appear and testify subject to the rules of evidence and the right of cross-examination. (*Fewel* v. *Fewel, supra,* p. 436.) And as heretofore noted, there is no showing that the order of the court was not made after consideration of the affidavits of both parties as well as the report of the investigator, and by the same rule which entitled the court to disregard the investigator's report when there is other evidence, the court may, after considering all other evidence, nevertheless adopt the recommendations proffered by the court investigator. (*Fewel* v. *Fewel, supra,* p. 436.)

It is true, as contended by appellant, that contained in the investigator's report were many statements which were not competent evidence. Some were hearsay and others referred to conditions antedating the interlocutory judgment of divorce, while still other statements were mere opinions and conclusions of the investigator; but the report also contained much first-hand information concerning the children, the parents, the conditions under which the children were living, and the type and kind of home in which respondent father proposed to place them. In other words, there was contained in the report much of the information referred to by the Supreme Court in *Fewel* v. *Fewel, supra,* page 435, as being "of vast importance to the court and to the children whose interests are involved." No objection was made to the aforesaid incompetent evidence, and we cannot assume that the court considered any other than competent and ad-

missible evidence. There is no showing made here that the appointment of the investigator and the report made by her were not in conformity with the intent and purpose of section 261a of the Code of Civil Procedure, to "assist the court in the transaction of the judicial business of said court," or that the investigator replaced rather than assisted the court.

Appellant's final contention, that facts justifying modification of an order *in re* custody of children may not be established by affidavit of the court investigator, does not require discussion. In *Fewel* v. *Fewel, supra,* at page 436, the Supreme Court emphatically states that "The reports of the investigators should be presented in affidavit form, or otherwise under oath." In any event, the investigation and subsequent report of the court investigator were made pursuant to stipulation of the parties, and it is but reasonable and natural to assume that it was contemplated and intended that such report should be used at the hearing. Otherwise, for what purpose was it stipulated that the investigation might be made and the report rendered?

For the reasons herein stated, the order is affirmed.

York, P. J., and Doran, J., concurred.