[Civ. No. 7895. Third Dist. July 12, 1951.]

HAROLD E. WILKINSON, Respondent, v. GERALDINE M. WILKINSON, Appellant.

Spurr & Brunner for Appellant.

Lovett K. Fraser for Respondent.

ADAMS, P. J.—On February 2, 1948, in the Superior Court of Lake County, an interlocutory decree of divorce was made and entered in favor of the plaintiff, Harold E. Wilkinson, in which it was ordered that the care, custody and control of two minor daughters of the parties, to wit: Patricia Jean, then aged about 3 years, and Connie Elizabeth, aged about 2 years, be awarded to plaintiff with the "strict condition" that said children be kept and maintained in the home of plaintiff's mother (Mrs. Helen Wilkinson), under her supervision and care, with the right of defendant to visit with them at any and all reasonable and proper times. A final decree was entered February 18, 1949.

On May 8, 1949, defendant married one Manuel N. Smith, and these two set up a home for themselves near Kelseyville. On September 19th Mrs. Smith filed notice of motion to modify the decree of divorce to provide that the custody of the two children be awarded to her, subject to the right of plaintiff to visit with them at all reasonable times and places.

In the meantime Harold Wilkinson had remarried and was then living with his new wife and her two children, aged 7 and 4 years, at a place about 17 miles north of Upper Lake, where he was employed on a lumber operation.

Mrs. Smith's motion for modification was supported by her own affidavit in which she averred that she and her husband maintained a home at Kelseyville, in which there was adequate room and provision for the care of her children. Manuel Smith filed a supporting affidavit stating that he desired that his wife's children be awarded to her, and that he would treat them as his own children. Helen Wilkinson, the grandmother, filed an affidavit in opposition stating that the children were happy in their present home, were kept clean and neat, and that it was for their best interests that they remain with her. Harold Wilkinson also filed an opposing affidavit in which he asserted that there had not been a sufficient change in circumstances to justify change of custody; that the children were being given good care by his parents, kept clean, furnished good food, a good place to sleep, plenty of milk to drink, and were happy; and that it was for their best interests that they remain in the home of his parents.

A hearing was had on defendant's motion, at which testimony was adduced by both parties. The Smiths testified that Mr. Smith had permanent employment at the Lake Laundry which paid him about $200 per month; that Mrs. Smith also worked there and was earning about $35 per week; that their

home consisted of 3½ acres of land with a three-room house to which a fourth room was being added; that they were paying $1,000 for the property, but still owed about $350 which was being paid off in monthly installments; that their earnings were being applied largely to improvements; that the interior of the house had been refloored, a ceiling of sheet rock added, cabinets, a sink, etc., built, and the whole interior painted. It was admitted they had no water on the place except what they brought in, and had no garden; but they testified they were negotiating for the sinking of a well, and intended to stucco the outside of the house. Four witnesses testified for Mrs. Smith and expressed the view that she was a fit and proper person to have the custody of her children. Regarding opportunities which had been given Mrs. Smith to see her daughters, she stated that when she went to see them her welcome had been according to the mood of the grandmother; that the latter had taught the children to call her "Gerry," and did not tell them she was their mother; that on one occasion when she went there with Mr. Smith, they were told by the grandmother and grandfather to leave, though Mrs. Wilkinson had told Mrs. Smith that she could bring her husband; and that Mrs. Wilkinson then upbraided defendant in the presence of the children, telling her she was "no good."

Harold Wilkinson, called under section 2055 of the Code of Civil Procedure, testified that he was supporting his new wife and her two children, 4 and 7 years old; that he gave his mother $5.00 or $10 per week for support of the children, but that he did not take his children into his own home.

Testimony in opposition to the motion was given by the grandmother, who stated she was able to take care of the children, that they were bathed twice daily, had three or four dresses a day and never went to bed with the same gowns on, that they had all the milk and butter they wanted, that their house had running water, a bathtub and inside toilet. She admitted that she did not talk to the children about their mother, and they knew her only as Gerry. She also admitted that she worked outside her home during the summertime, and that the children were then left to the care of their grandfather. The grandfather testified as to his four cows, his garden, some 4,000 chickens that he had raised, etc., and that the children were happy. He also said that their mother was not talked about to the children; that the mother was received when she came alone, but when anyone came with

her they were requested to leave. Four witnesses, two of them relatives, testified that they thought the grandmother a fit person to take care of the children. No testimony was adduced as to any unfitness of Mrs. Smith to have the custody of her children, nor of any unfitness of Mr. Smith.

At the conclusion of the testimony the trial court stated that it would like a report by the probation officer "respecting the conditions in the respective homes," after the receipt of which the matter would stand submitted. Counsel for Mrs. Smith asked that he be permitted to see the report of the probation officer, and was told a copy would be sent to both sides.

The report of the probation officer, though she was asked to report only "respecting the conditions in the respective homes," exceeded that scope. It was unverified. As for the Smith home it confirmed the testimony given at the trial, and also reported that it was adequately furnished exclusive of plumbing, and was neat, clean and well kept on the inside; also that there was evidence of an effort to establish a home by this young couple. But the report also contained a report on the Wilkinson family and on Mrs. Smith's parents and their children, which was derogatory to the latter. The probation officer expressed the view that she did not doubt that Mrs. Smith was serious in her desire to have her children with her in her home and that the conditions there had improved over those of the past, but that the "security and stability that the children are deserving of is not established there," and that it would not be for their best interest to take them from the home of the grandparents.

To this report Mrs. Smith filed exceptions and objections on the ground that much of it was hearsay and was irrelevant, incompetent and immaterial, as were the conclusion and recommendation of the probation officer. The court, however, without a hearing upon the objections, made its order in which it stated that the recommendation of the probation officer was that the children remain in the home of the grandparents, but that this should be a matter in the discretion of the father; and it amended the prior order awarding the custody of the children to their father with the "recommendation that their present status be not disturbed in accordance with the findings of the Probation Officer." There were no findings of unfitness of Mrs. Smith, nor mention of the changed conditions since the divorce decrees, and the only thing upon which the denial of Mrs. Smith's motion was based was appar-

ently the greater desirability of the *home* of the grandparents, as compared with that of the Smiths.

Mrs. Smith has appealed, and it is urged for reversal that the court erred in receiving and acting upon the unsworn report of the probation officer, that the court abused its discretion when it neither granted nor denied defendant's motion for modification but made an unsolicited order modifying its original order in favor of the father, and that the change of conditions established by the evidence entitled her to preference over the grandparents and the nondesirous father.

It is plain that the contest here is between the grandparents and the mother of these children, for though their ostensible custody is in the father, with a recommendation only they remain with the grandparents, the father has expressed no desire or intention to take them into his own home, and has, in effect, abdicated in favor of his parents; and the result of course will be that the grandparents retain custody of these little girls, unless it be awarded to their mother.

It is well established that as between a parent and a grandparent the latter is a stranger to an action involving custody (*Roche* v. *Roche,* 25 Cal.2d 141, 144 [152 P.2d 999]; *Robertson* v. *Robertson,* 72 Cal.App.2d 129, 133 [164 P.2d 52]; *Becker* v. *Becker,* 94 Cal.App.2d 830, 833 [211 P.2d 598]), and as between them and the mother of the children her rights are paramount. (*In re White,* 54 Cal.App.2d 637 [129 P.2d 706]; *Roche* v. *Roche, supra; Stever* v. *Stever,* 6 Cal.2d 166, 170 [56 P.2d 1229]; *Newby* v. *Newby,* 55 Cal. App. 114 [202 P. 891]; *Robertson* v. *Robertson, supra,* at p. 132.)

While it is true that in the original divorce decrees the custody of the children was denied to their mother, and that in order to justify a change of custody a change in circumstances must be shown, there is ample evidence here of such change. It was shown that the father of these children has remarried, has established a home of his own and has taken the two small children of his present wife into his home and undertaken to support them; and that he has expressed no desire or intention to take the children of his former marriage into his present home. It was likewise shown that the mother of these children has remarried and that she and her husband have now established a home of their own. Both of these changes of circumstances are sufficient to justify the change of custody prayed for by Mrs. Smith. (*Ott* v. *Ott,* 127 Cal.App. 322, 323 [15 P.2d 896]; *Peterson* v. *Peterson,*

64 Cal.App.2d 631, 633 [149 P.2d 206] ; *Noon* v. *Noon,* 84 Cal. App.2d 374, 379 [191 P.2d 35] ; *Robertson* v. *Robertson, supra,* at page 134.)

It is provided by section 138 of the Civil Code that in actions for divorce, as between parents adversely claiming the custody of minor children, neither is entitled to it as of right, but, other things being equal, if a child is of tender years it should be given to the mother. This has often been held to be of special importance if the child is a girl. (*Washburn* v. *Washburn,* 49 Cal.App.2d 581, 587 [122 P.2d 96] ; *Juri* v. *Juri,* 69 Cal.App.2d 773, 779 [160 P.2d 73] ; *Estate of Lindner,* 13 Cal.App. 208, 212 [109 P. 101] ; *Bemis* v. *Bemis,* 89 Cal.App.2d 80, 83 [200 P.2d 84] ; *Noon* v. *Noon, supra.*)

■ While these grandparents may be able to give to these infants greater material advantages, this court said in *In re White, supra,* at page 640, that: "The right of a parent to the care and custody of a child cannot be taken away merely because the court may believe that some third person can give the child better care and greater protection. One of the natural rights incident to parenthood, a right supported by law and sound public policy, is the right to the care and custody of a minor child, and this right can only be forfeited by a parent upon proof that the parent is unfit to have such care and custody." That language was quoted and approved in *Roche* v. *Roche, supra,* at page 144. Also see *Robertson* v. *Robertson, supra,* at page 133.

While it is urged upon us that the findings of the trial court, when the divorce was granted to plaintiff in this action, recited that the mother of the infants was not a fit and proper person to have their custody, these findings were not referred to in the present proceeding. It is undenied that nothing has been shown in this proceeding which reflects unfavorably upon the conduct of Mrs. Smith since the making of the interlocutory decree, or is incompatible with a conclusion that if she once erred she has rehabilitated herself, and that she is now a fit and proper person to have the custody of her offspring. It is her present fitness and not her past conduct which should be determinative of present rights. ■ In *Prouty* v. *Prouty,* 16 Cal.2d 190, 194 [105 P.2d 295], the court said: "The question as to whether a parent is a fit or proper person to have the custody of a minor child refers, however, to his or her fitness at the time of the hearing and is not necessarily controlled by conduct many years prior thereto. (*Ott* v. *Ott,* 127 Cal.App. 322 [15 P.2d 896] ; *In re Green,*

192 Cal. 714 [221 P. 903].) Evidence of prior acts of misconduct may be admissible if it can be said to have a direct bearing upon the issue of present unfitness, but such evidence should be limited to this issue alone." Also see *Guardianship of Jones*, 86 Cal.App.2d 35 [194 P.2d 141]; *Guardianship of Case*, 57 Cal.App.2d 844, 847 [135 P.2d 681]; *In re Wood*, 103 Cal.App. 790, 793 [285 P. 323].

Regarding appellant's contention that the trial court erred in acting upon the report of the probation officer, respondent says in his brief that such report "was simply a report on everything that had been testified to by both parties," and that it "added nothing to the case." Such, however, is not the situation. While the probation officer was requested to report solely respecting "the conditions in the respective homes" she exceeded that request by including commendatory statements regarding the Wilkinson family, and purely hearsay matters derogatory to Mrs. Smith's family, and alleged misconduct of her brother; and it also included an unsolicited recommendation that the children remain in the home of their grandparents. Appellant filed objections to the report on these grounds, but they were ignored by the court which within four days, including a Saturday and a Sunday, made its order which recited that "the recommendation of the Probation Officer" is that the children remain in the home of the grandparents. It then awarded the custody to the father "with the recommendation that their present status be not disturbed in accordance with the findings of the Probation Officer."

The conclusion from such order is that the court relied upon and followed the recommendation of the probation officer, disregarding the changed circumstances, the absence of any request on the part of the father that the custody be retained in him, and his testimony that he did not take his children into his own home and that he saw them only about once a week.

There is no statutory authority for reports of probation or other investigative officers in divorce actions, except such as are provided under sections 261a and 1744 of the Code of Civil Procedure, which do not apply to Lake County; and even regarding Los Angeles County, to which they do apply, the Supreme Court said, in *Fewel* v. *Fewel*, 23 Cal.2d 431, 434 [144 P.2d 592], that reports of investigators of domestic relations cases were to be used to *assist* the court, and not to *replace* it, that they should be presented in affidavit form or otherwise *under oath*, and, upon timely demand, such

investigators should be required to testify as any other witness subject to the right of cross-examination. Here there was neither a verification of the report or an opportunity to cross-examine the reporting officer.

While, generally speaking, the best interests of a child in a controversy over its custody is matter for determination by a trial court, and its determination will not be overruled if fairly considered and supported by competent evidence, the fact remains that, as between a mother and the grandparents of a child, the rights of the mother are paramount; and the grandparents should not be permitted to retain custody where there is no showing that a mother, seeking the custody of her two small girls, is not *presently* a fit and proper person to have their custody. Conceding that the home of the Smiths is not as adequate as that of the grandparents in that it lacks running water, a bathtub and an inside toilet, the rights of a mother to bring up her little daughters and the rights of the children to know and to have the love and care of their natural mother should not be denied because of the lack of plumbing facilities. Sanitary plumbing is not essential to the welfare of small children. Unnumbered children today prosper without it, and to earlier generations it was unknown. Also it may be added that three or four clean dresses each day, or dresses at all for that matter, are not standard requirements today even for the children of the "best families." And finally, as this court said in *Robertson* v. *Robertson, supra,* at page 135:

"In the case of a child of tender years, experience has taught that in the vast majority of cases there is no one who will give such complete and selfless devotion, and so unhesitatingly and unstintingly make the sacrifices which the welfare of the child demands, as the child's own mother. The record herein abounds in evidence showing the anxious desires of a mother to care for her child. Under such circumstances fairness alone requires that she and not a third person be allowed the opportunity to carry out the trust she as a mother owes her child. (*Juri* v. *Juri,* 69 Cal.App.2d 773, 778, 779 [160 P.2d 73] ; *Estate of Lindner,* 13 Cal.App. 208, 212 [109 P. 101].)"

The order appealed from is reversed.

Peek, J., and Van Dyke, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied September 7, 1951. Shenk, J., Schauer, J., and Spence, J., voted for a hearing.