[Civ. No. 529.    Fifth Dist.    Aug. 23, 1966.]

In re VIRGINIA ILENE HUDMON on Behalf of JACKIJO HELEN MILLER on Habeas Corpus.

RUEL T. MILLER et al., Plaintiffs and Appellants, v. VIRGINIA ILENE COONFIELD HUDMON, Defendant and Respondent.

(Consolidated Cases.)

Lawrence W. Young, Robert L. Young and Milton William Gordon for Plaintiffs and Appellants.

George L. Thurlow for Defendant and Respondent.

McMURRAY, J. pro tem.*—This is an appeal from a judgment of the superior court entered after a minute order granting respondent's petition for a writ of habeas corpus freeing Jackijo Miller from the custody of appellants and denying appellants' petition for a declaration that Jackijo was aban-

---

*Assigned by the Chairman of the Judicial Council.

doned by respondent and is free of her custody and control. Appellants also pretend to appeal from an order denying a motion for new trial; this order is nonappealable and the purported appeal therefrom is dismissed. (Code Civ. Proc., § 963, subd. 2; *Torres* v. *City of Los Angeles,* 58 Cal.2d 35, 55 [22 Cal.Rptr. 866, 372 P.2d 906].)

In 1964, an Arkansas court, which then had jurisdiction over appellants, granted a petition by respondent for a writ of habeas corpus ordering that Jackijo be free from appellants' control and be returned to her natural mother, the respondent. Respondent subsequently filed the instant California petition for a writ of habeas corpus. Appellants then filed an action under Civil Code section 232 requesting that Jackijo be declared a child abandoned by her parent. The two actions were consolidated for trial and heard by the court which resolved the actions in favor of respondent and against appellants. The court's findings held that Jackijo's best interests required that she be given into the custody of her natural mother, and found that Jackijo was not an abandoned child within the meaning of Civil Code section 232.

A motion for new trial was made based on the allegation of newly-discovered evidence. This motion was considered and rejected by the trial court. The appellants filed a timely notice of appeal and herein challenge the sufficiency of the evidence to support the findings and judgment.

▆▆▆ The facts which are here set forth are those most favorable to respondent, although from the entire record before us, it appears that neither appellants nor respondent show very much that is favorable in the way of stability or moral responsibility in their personal lives.

Appellants are the aunt and uncle of respondent who, in August 1958, came to appellants' home in Southern California to have her baby which had been conceived out of wedlock. The respondent testified at the trial that the baby was the result of a forced act of sexual intercourse with two young men; that she was sent to California because her parents were concerned about the girl's reputation and their reputation and thought that by sending her to California no publicity would attach to her indiscretion; that she stayed with appellants until her baby was born on October 21, 1958. According to respondent, her aunt and uncle did not treat her well; they locked her in her room and never took her any place; they threatened her life and stated that when the child was born it would be theirs; at one time during her stay, shortly before the child was born, the uncle forced his sexual atten-

tions upon the respondent. When Jackijo was born the respondent was told to, and did, list appellants' names on the birth certificate as the parents of the child. After the baby was born and respondent had returned to appellants' home from the hospital certain relatives of the parties visited the appellants' home and respondent was locked in her room and prevented from seeing them. On December 1, 1958, appellants drove respondent to Albuquerque, New Mexico, and put her on a bus for her home.

Respondent was short of cash and had no money to hire legal help to obtain the recovery of Jackijo, so she wrote a story to True Story magazine titled, "My Aunt Stole My Baby," which was rejected by the publishers and she gained no money thereby. Subsequently, in 1963, she raised enough money to see a lawyer who wrote to appellants telling them that respondent wanted her child back. A year later further correspondence was addressed to appellants demanding the return of the child. In January 1964 appellants left California in order to return to certain property they owned in Arkansas. While there, they were served with a writ of habeas corpus, entered a general appearance in the Arkansas action, and thereafter left the state; thereafter the judgment of the Arkansas court awarded the custody of the child to respondent. After appellants' return to California they settled in Tulare County where, later, the child was taken from them and placed in the custody of the probation officer. These two actions were then instituted in Tulare County respecting the custody of the child.

The record discloses that appellants had taken care of Jackijo and provided for her needs since she was first brought to their home. There is testimony of several witnesses that the appellants had been good and loving custodians of Jackijo. The record shows that appellant aunt has been married once before and has three children by that marriage, and that appellant uncle, who was previously married twice, has four children by those two marriages, and has been supporting a child of his conceived and born out of wedlock. Appellant uncle has a criminal record for manslaughter for a beating inflicted upon a former wife in Texas and he has also been arrested in California on a disorderly conduct charge.

Respondent showed a somewhat casual attitude in her relationships with other men up until her marriage to her present husband. In addition to Jackijo, she had another child born out of wedlock who was subsequently placed for adoption in

Texas. She has had serious brain surgery but contends that problem will not affect her in the future. The present husband of the respondent has a record showing that he has had mental problems from time to time even involving deviate behavior with an infant daughter of his prior marriage, but that presently he is in a stable employment which affords him an adequate wage. He has five minor children by a prior marriage, all of whom appear to have been in trouble with juvenile authorities. The parties all felt they could give a good home to Jackijo. The respondent testified that she at no time intended to abandon her child and that she was forced to give up the child by reason of threats and coercion by appellants.

The issues are:

1. Does the evidence support the trial court's findings in the habeas corpus proceeding giving custody of Jackijo to her natural mother?

2. Does the evidence support the trial court's finding that Jackijo was not an abandoned child within the meaning of Civil Code section 232?

Appellants, although purporting to recognize the rule on appeal that the sufficiency of the evidence to support the judgment is to be viewed most favorably to respondent, do not in fact adhere to this rule, but proceed to quarrel with the evidence when it is adverse to their interests. ▮ The question of fitness as between third parties and a natural parent puts upon the nonparent the burden of proving the parent's unfitness. (*Wilkinson* v. *Wilkinson,* 105 Cal.App.2d 392, 398 [233 P.2d 639]; *Guardianship of Clark,* 217 Cal.App.2d 808, 811 [32 Cal.Rptr. 111].) ▮ Respondent's activities as a young girl do not reflect the stability and character which call forth admiration. However, she has now been married since 1961 and her home appears to be a fairly stable one. Her present husband is not a party to this proceeding except insofar as the best interests of the minor may be concerned; and although the record discloses an unpleasant background insofar as the husband is concerned, this is in the past and it appears that presently he seems to be well settled in his community and is earning a stable livelihood.

The trial court did not abuse its discretion in giving custody to the natural parent and in denying it to appellants, who are approaching 60 years of age and are in a relatively insecure economic condition. The appellants failed to produce current evidence of respondent's unfitness to care for her child and the trial court was correct in awarding custody to respondent.

Indeed, in *Stewart* v. *Stewart,* 41 Cal.2d 447 [260 P.2d 44], where the trial court denied custody to a natural mother who had remarried and established a new home within three years after custody had been given to an aunt and uncle, the Supreme Court reversed, saying: ''Where a parent applying for custody is in a position to take the child and is not shown to be unfit, the court may not award custody to strangers merely because it feels that they may be more fit or that they may be more able to provide financial, educational, social, or other benefits.'' (P. 451.)

(See also *Morgan* v. *Morgan,* 217 Cal.App.2d 535 [31 Cal. Rptr. 682]; *Wilkinson* v. *Wilkinson, supra,* 105 Cal.App.2d 392.) Since the evidence supports the court's finding that respondent is presently a fit parent, the trial court's grant of the writ was proper.

Appellants have presented two other arguments regarding the propriety of the granting of habeas corpus, arguing that the trial court's minute order impeaches its findings on the habeas corpus petition, since, included within the minute order is an indication that the court was persuaded as to the disposition of the case by a letter written by appellant aunt indicating that appellants forcefully removed Jackijo from respondent. ■ The general rule is that the trial court's judgment and findings of fact and conclusions of law may not be impeached by the trial court's memorandum of opinion or other minute order. (*Oldis* v. *La Societe Francaise,* 130 Cal. App.2d 461, 471 [279 P.2d 184].)

■ Appellants cite cases indicating that occasionally a minute order may be used to show that the trial court used an erroneous reasoning process in arriving at the result (see, e.g., *Ehrenreich* v. *Shelton,* 213 Cal.App.2d 376, 378 [28 Cal.Rptr. 855]), but this does not appear to be the situation here presented. The trial court's minute order first grants the writ of habeas corpus as prayed, and second, denies appellants' petition to declare Jackijo free from parental control. The trial judge attempted to soften the impact of his decision by stating that he sympathized with appellants and further that he had no alternative under the facts and the law than to grant this relief. In so doing, he refers to the letter which is petitioner's exhibit 12. This does not mean that the court felt it was absolutely governed by exhibit 12 nor that it did anything other than what it considered its duty under the facts and the law before it. It merely expresses a sympathy for appellants in causing the minor to be removed from them

under the writ of habeas corpus and the denial of their petition to declare the minor an abandoned child.

Both parties argue about the effect of the Arkansas decree in the California proceedings. The matter is not within the scope of this appeal. There is nothing to show that the trial court felt bound by the Arkansas decree. It properly heard the evidence and decided the question under the petition for the writ as a matter which was to be determined by adjudging the fitness or unfitness of the parent to have the child. The basic question on such a proceeding as this is the welfare of the child, and although often decrees are enforced as a matter of comity, this is not the paramount consideration. (*In re Walker,* 228 Cal.App.2d 217 [39 Cal.Rptr. 243].)

Appellants argue vigorously that the new evidence which was submitted by them relative to sexual deviation as revealed by psychiatric reports on respondent's husband required a finding adverse to that made by the court here. This matter was submitted after the trial court's findings and judgment and was used as a ground for the petition for new trial. A new trial was denied by the trial court which felt that appellants failed to show due diligence in discovering the evidence or a satisfactory reason for failure to produce it at the trial, that the evidence was cumulative, and, even considering the evidence, it did not persuade the trial court that its decision was wrong. While a failure to show due diligence, standing alone, might well be insufficient to support a court in denying a new trial on the ground of newly discovered evidence where the welfare of a minor is the principal consideration for the court, such does not appear to be the case here. It affirmatively appears that the court felt such evidence was cumulative and that the court did view such evidence but found it of a quality which did not make a different result probable on a retrial. (See *Kyle* v. *Stone,* 234 Cal.App.2d 286, 293-294 [44 Cal.Rptr. 390].) Appellants fail to demonstrate that the newly discovered evidence is such that a different result would be probable on retrial. (*Shivers* v. *Palmer,* 59 Cal.App.2d 572, 582 [139 P.2d 952].)

In determining whether or not the evidence supports the trial court's finding that Jackijo was not an abandoned child within the meaning of Civil Code section 232, the appellants again base their contentions mainly upon an interpretation of the evidence which is adverse to respondent rather than favorable to her. The trial court is allowed to judge the credibility of the witnesses and determine which of the witnesses it

should believe. In the instant case a conviction upon the part of the trier of fact that the respondent told the truth about being forced to leave her child thoroughly justifies its finding that the minor here was not an abandoned child. Indeed, although the trial court found that respondent was to prevail in both of the actions before it, it may be said in passing that had the trial court determined that neither respondent nor appellants were entitled to the custody of the child and had awarded custody to the probation department, such finding also might well be upheld.

The judgment is affirmed.

Conley, P. J., and Stone, J., concurred.