[Civ. No. 21471. Fourth Dist., Div. Two. Dec. 27, 1979.]

D. G., Petitioner, v.
THE SUPERIOR COURT OF ORANGE COUNTY, Respondent;
U. G., a Minor, etc., et al., Real Parties in Interest.

COUNSEL

Timothy J. Lee and Robert Klotz for Petitioner.

No appearance for Respondent.

Cecil Hicks, District Attorney, Michael R. Capizzi, Assistant District Attorney, John D. Conley and Robert Molko, Deputy District Attorneys, for Real Parties in Interest.

OPINION

MORRIS, J.—In this action petitioner seeks a writ of mandate to compel respondent court to vacate its order denying petitioner's motion to replace John B. Koughan as guardian ad litem for petitioner's minor child. The child has been named as a plaintiff in an action to establish paternity, for child support, and for reimbursement of welfare funds expended by the County of Orange for the support of the minor.

Petitioner has received welfare funds for support of herself and the minor child since September 7, 1978; the child was born on April 12, 1979. When petitioner initially applied for public assistance for herself and her unborn child, she was referred to the district attorney pursuant to Welfare and Institutions Code section 11476.[1] Following the section 11476 investigation, the district attorney filed the aforesaid action.

---

[1] Section 11476 reads in pertinent part as follows: "It shall be the duty of the county department to refer all cases where a parent is absent from the home, or where the parents are unmarried and parentage has not been determined by a court of competent jurisdiction, to the district attorney immediately at the time the application for assistance, or certificate of eligibility, is signed by the applicant or recipient. If an applicant

Real parties in interest are the plaintiffs in the action entitled D. G. v. Raine (Super. Ct. Orange Co., No. AD 19509). The minor child, by John B. Koughan[2] as guardian ad litem, is plaintiff in the first cause of action which seeks to establish that the named defendant is the child's father and that he is obligated to provide support for the child. The County of Orange is the plaintiff in the second cause of action which seeks reimbursement for necessary support and maintenance provided for the child by the county. The petitioner is not a party to the action.

The complaint was filed on November 16, 1978. On January 17, 1979, petitioner advised the district attorney that she believed that the establishment of paternity was not in the best interests of the child, and asked to be excused for such "good cause" from the mandatory cooperation in the establishment of paternity required by section 11477.[3] On February 9, 1979, petitioner withdrew her "good cause" claim and asked that she be appointed guardian ad litem. Thereafter, the petitioner filed a motion to vacate Koughan's appointment and to appoint petitioner in his place. The motion was denied, and petitioner sought a writ of mandate to compel the superior court to grant the motion for substitution. This court initially denied the writ. However, following a petition to the California Supreme Court, the matter was retransferred to this court with directions to issue an alternative writ. The alternative writ was issued.

is found to be ineligible, such applicant shall be notified in writing that the referral of case to the district attorney may be terminated at such applicant's request. The county department shall cooperate with the district attorney and shall make available to him all pertinent information as provided in Section 11478.

"Upon referral from the county department, the district attorney shall investigate the question of nonsupport or paternity and shall take all steps necessary to obtain support for the needy child and determine paternity in the case of a child born out of wedlock...."

All references are to the Welfare and Institutions Code except as otherwise stated.

[2]John B. Koughan is an employee of the district attorney's office.

[3]Section 11477 reads in pertinent part as follows: "As a condition of eligibility for aid paid under this chapter, each applicant or recipient shall:

"(a)   Assign to the county any rights to support from any other person such applicant may have in their own behalf or in behalf of any other family member for whom the applicant is applying for or receiving aid, and which have accrued at the time such assignment is made. Receipt of public assistance under this chapter shall operate as an assignment by operation of law.

"(b)   Cooperate with the county welfare department and district attorney in establishing the paternity of a child born out of wedlock with respect to whom aid is claimed, and in obtaining any support payments due any person for whom aid is requested or obtained...."

The statute was recently amended to provide that an assignment of support rights to the county also constitutes an assignment to the state. (Stats. 1979, ch. 1030, § 13.)

Petitioner contends that the trial court abused its discretion in refusing to vacate the appointment of the present guardian ad litem and to appoint the mother because (1) the present guardian has not faithfully discharged his duties as guardian ad litem; (2) the present guardian has a conflict of interest; and (3) petitioner as the mother of the child has a preference to serve as guardian ad litem.

In order to understand the extent of the court's discretion in the particular circumstances of this case, and to more fully explore the reasonableness of the court's action, it is necessary to understand the statutory scheme under which the action was initiated.

Welfare and Institutions Code, division 9, part 3, chapter 2, commencing with section 11200 (popularly known as the Burton-Miller Act) provides for public assistance to families with dependent children. Article 7 of chapter 2 commencing with section 11475 establishes a state plan for securing child support and determining paternity in the case of children receiving aid under the chapter. It is in this context that section 11476, *supra*, requires the county department administering aid to refer to the district attorney all cases where parentage has not been determined; and section 11477, *supra*, makes the recipient's cooperation a condition of eligibility for aid.

Action by the district attorney to enforce such support is specifically authorized by section 11350.1 as follows: "Notwithstanding the provisions of any other statute, in any action brought by the district attorney for the support of a minor child or children, the action may be prosecuted in the name of the county on behalf of such minor child or children. The mother shall not be a necessary party to such action but may be subpoenaed as a witness. In an action under this section there shall be no joinder of actions, or coordination of actions, or cross-complaints, and the issues shall be limited strictly to the question of paternity, if applicable, and child support. Nor shall such support or paternity action be delayed or stayed because of the pendency of any other action between the parties. Nothing herein contained shall be construed to prevent the parties from bringing an independent action under the Family Law Act or otherwise, and litigating the issue of support. In such event, the court in such proceedings shall make an independent determi-

nation on the issue of support which shall supersede the order made pursuant to this section."

It appears that the paternity-support action which is the subject of the present proceeding was brought by the district attorney pursuant to the authority of section 11350.1. However, because the district attorney elected to join the minor child as a plaintiff in the action, we must also consider the effect, if any, of certain provisions of the Uniform Parentage Act, found in Civil Code sections 7000-7018.

Civil Code section 7006 provides in pertinent part as follows: "(c)   An action to determine the existence of the father and child relationship with respect to a child who has no presumed father under Section 7004 or whose presumed father is deceased may be brought by the child or personal representative of the child, the State Department of Social Services, the mother or the personal representative or a parent of the mother if the mother has died or is a minor, a man alleged or alleging himself to be the father, or the personal representative or a parent of the alleged father if the alleged father has died or is a minor . . . .

"•      .      .      .      .      .      .      .      .      .      .      .      .      .      .

"(f)   The district attorney may also bring an action under this section in any case in which he believes that the interests of justice will be served thereby."

In view of the statutory plan for enforcement provided in the Welfare and Institutions Code, it is apparent that the district attorney was authorized, even had the duty, to proceed with the support action and, as a necessary incident thereto, to seek to have paternity established. Although section 11350.1 seems to specifically authorize the action "in the name of the county on behalf of such minor child," there was certainly nothing improper in proceeding in the name of the child by a guardian ad litem. "A guardian ad litem may be appointed in any case, when it is deemed by the court in which the action or proceeding is prosecuted, or by a judge thereof, expedient to represent the minor . . . in the action or proceeding, notwithstanding he may have a guardian of the estate and may have appeared by him . . . ." (Code Civ. Proc., § 372.)

It would therefore seem clear that, without any reference to the Uniform Parentage Act contained in Civil Code sections 7000-7018, the

district attorney had authority to proceed (see *Salas* v. *Cortez* (1979) 24 Cal.3d 22, 30 [154 Cal.Rptr. 529, 593 P.2d 226]), and the court could properly appoint a guardian ad litem pursuant to Code of Civil Procedure section 372. However, the district attorney did seek and obtain the appointment of the guardian ad litem under Civil Code section 7008, thereby seemingly converting the first cause of action into an action under Civil Code section 7006. Since subdivision (a) of Civil Code section 7006 permits the action to be brought by the natural mother, and subdivision (f) authorizes the district attorney to bring such action "in any case in which he believes that the interests of justice will be served thereby," it is not particularly surprising that a conflict has arisen between them regarding the prosecution of the action.

What is most troubling is an issue the parties have not seriously addressed. That is the obvious difficulty in attempting to join an action for a declaration of parentage under Civil Code section 7006 with an action under section 11350.1 for support. Section 11350.1 specifically provides that there shall be no joinder of actions and that "the issues shall be limited strictly to the question of paternity, if applicable, and child support," whereas in an action under the Uniform Parentage Act, Civil Code section 7010, subdivision (c) provides that "[t]he judgment or order may contain any other provision directed against the appropriate party to the proceeding, concerning the duty of support, the custody and guardianship of the child, visitation privileges with the child, the furnishing of bond or other security for the payment of the judgment, or any other matter in the best interest of the child. The judgment or order may direct the father to pay the reasonable expenses of the mother's pregnancy and confinement."

In view of these conflicting provisions, it seems apparent that the first cause of action is not and cannot be treated as being an action under the Civil Code provisions. However, as previously noted, the action to determine parentage under the circumstances of this case is clearly authorized by the provisions of section 11350.1 ■ Inasmuch as the complaint asks for no more than is proper within the context of a section 11350.1 action, the complaint may be treated as such, and the appointment of the guardian ad litem as having been made pursuant to the general authority of Code of Civil Procedure section 372.

Therefore, we now turn to a consideration of petitioner's contentions with respect to the reasonableness of the court's action in denying her

motion to be substituted as guardian ad litem in an action under section 11350.1.

■ Certainly there is nothing that as a matter of law would disqualify the mother from acting as guardian ad litem in such a proceeding.[4] However, petitioner has cited no statutory authority for her contention that the mother is to be given preference in such appointment.

In assessing the reasonableness of the trial court's action, we must simply consider the nature and purpose of the proceeding and facts presented to the trial court in support of the motion.

I

■ Petitioner's first contention is that the present guardian ad litem has failed to properly discharge his duties.

Citing *Berry* v. *Chaplin* (1946) 74 Cal.App.2d 652, 657-658 [169 P.2d 442], for the principle that, "The appointment of a guardian *ad litem* is not a bare technicality and the office of guardian involves more than perfunctory or shadowy duties," petitioner argues that Koughan has failed in the discharge of his duties because he has failed to "investigate and know the individual circumstances of his ward." Petitioner then states that "Knowledge of the minor's situation must also be continuing since the interests of the child in [a] paternity action may change over time."

By removing the statement from its context, petitioner has simply misunderstood the purport of the *Berry* decision. The issue before the court was whether, in a filiation proceeding, a guardian ad litem has the power to enter into a stipulation which will result in a surrender of the ward's right to a trial. The court held that she does not, as follows: "The guardian *ad litem* and her attorneys were without power to enter into and the court was without power to approve the stipulation. Section 196a of the Civil Code provides that a civil suit in behalf of a minor illegitimate child to enforce the obligation of a parent to support it may be maintained by a guardian *ad litem* and in such action the court has power to order and enforce the performance of such obligation. The

---

[4]Real party in interest has correctly observed that Civil Code section 7008 as initially enacted in 1975 provided that "The child's mother or father may not represent the child as guardian or otherwise." (Stats. 1975, ch. 1244, § 11, p. 3199.) That prohibition was deleted in the 1977 amendment to the section. (Stats. 1977, ch. 207, § 1, p. 729.)

power of a guardian *ad litem* in such an action is not unlimited. In effect the court is the guardian, and the person named as guardian *ad litem* is an officer of the court appointing him and is the agent of the court." (*Berry* v. *Chaplin, supra*, 74 Cal.App.2d 652, 657.) In the sentence immediately following the passage cited by petitioner, the court stated, "It is the duty of a guardian *ad litem* to protect or defend a suit, as the case may be." (*Id.*, at p. 658.) Literally the guardian ad litem is one "appointed for the purposes of the suit." (Black's Law Dict. (4th ed. 1951) p. 57, col. 1.)

Where the purpose of the suit is limited to proof of paternity and the right to support, the guardian ad litem cannot properly be accused of failure to discharge his duties because he has not investigated matters dealing with custody and visitation rights, as petitioner suggests.

In any event, petitioner has failed to demonstrate that the present guardian failed to investigate or to know the individual circumstances of the ward. Petitioner has not produced any evidence to support her allegations.

In the context of the statutory scheme, it may be presumed that the guardian ad litem had available the records of the county welfare department and the information therein relevant to the child and petitioner. (See 62 Ops.Cal.Atty.Gen. 711.) Moreover, the return to the petition for writ of mandate alleges in paragraph V that "An investigation was then [initiated] which resulted in the filing of the present action."

## II

■ Petitioner next contends that the present guardian ad litem has a conflict of interest.

Here petitioner alludes to the limitations prescribed by section 11350.1, restricting the issues to paternity and support. That can hardly be viewed as a conflict of interest since those are the purposes of the suit and the guardian ad litem is appointed for "the purposes of the suit."

The fact that this action is so limited does not of course prevent the mother on her own behalf or on behalf of the child from initiating pro-

ceedings relating to custody and visitation, whether under Civil Code section 7006 or under the Family Law Act. Section 11350.1 specifically reserves the parties' right to bring such independent action.

Petitioner also argues that there is a conflict because of divided loyalties. This argument is based on the contention that the present guardian, as an employee of the county, might be forced to choose between the economic interests of the county and the interests of the minor child. Since for purposes of this lawsuit those interests appear identical, the argument fails.

We do not say that a conflict of interest could never exist. It is conceivable that under some circumstances it might be in the best interest of a child not to have paternity established. However, petitioner has completely failed to present any evidence that such circumstances exist in this case. The California Supreme Court has expressly recognized that generally it is in the best interest of a child to have parentage determined. In *Salas* v. *Cortez, supra*, 24 Cal.3d 22, 33-34, the court stated: "'If the child is to have anything, it must have a *right* to have his paternity ascertained in a fair and efficient manner.' (Krause [Illegitimacy: Law and Social Policy (1971)], at p. 113, italics in original.) It is in the child's interest not only to have it adjudicated that *some* man is his or her father and thus liable for support, but to have some assurance that the correct person has been so identified."

## III

Finally, petitioner contends that the mother has preference to serve as guardian ad litem. The sole authority cited for this proposition is *Wilkinson* v. *Wilkinson* (1951) 105 Cal.App.2d 392, 400 [233 P.2d 639], where the court stated that in a case of a child of tender years the mother is generally the person who will give the most complete and selfless devotion to the child. The court in *Wilkinson* was concerned with custody, not the prosecution of a lawsuit on behalf of the child.

Perhaps petitioner meant to allude to the order of preference set forth in Probate Code section 1407.[5] If that is the case, petitioner has again

---

[5]Recently repealed by Statutes 1979, chapter 726, section 1. New guardianship provisions apply the order of preference as set forth in Civil Code section 4600. (Prob. Code, § 1514, subd. (b); Stats. 1979, ch. 726, § 3.)

confused the function of a guardian ad litem. ■ The Probate Code guardianship provisions refer to a guardianship established to take care of the person or property of a minor, not for the purpose of prosecuting a lawsuit.

In *Estate of Rosin* (1964) 226 Cal.App.2d 166 [37 Cal.Rptr. 830], the court pointed out that even in establishing a guardianship of the estate, where the preferences of Probate Code section 1407 apply, the mother may not be qualified to handle the estate.

■ Neither Code of Civil Procedure section 372 nor Civil Code section 7006 establishes any order of preference for the appointment of a guardian ad litem. The matter is left to the sound discretion of the trial court.

Petitioner has failed to demonstrate any abuse of discretion in this case.

The writ is denied.

Gardner, P. J., and Tamura, J., concurred.

A petition for a rehearing was denied January 15, 1980, and petitioner's application for a hearing by the Supreme Court was denied March 6, 1980. Bird, C. J., and Newman, J., were of the opinion that the application should be granted.